[Civ. No. 16628.   First Dist., Div. Two.   Jan. 30, 1956.]

JESSE RONEY et al., Appellants, v. THE BOARD OF SUPERVISORS OF CONTRA COSTA COUNTY et al., Respondents.

Royal E. Handlos and Carlson, Collins, Gordon & Bold for Appellants.

Francis W. Collins, District Attorney, and Matthew S. Walker, Deputy District Attorney, for Respondents.

DEVINE, J. pro tem.*—Plaintiffs, who are the owners of land near Port Chicago in the county of Contra Costa, petitioned the superior court for a writ of mandate directing certain officials of the county to issue a land use permit to allow them to create a residential subdivision in an area zoned for heavy industry, and directing the officials to approve a subdivision map which had been filed. They also sought a declaratory judgment setting forth the rights and duties of the parties. The court denied the writ of mandate and declared that the county might deny a land use permit for residential purposes where it appears that such land use permit "will be deleterious to the public health, safety or welfare and the orderly development of the County of Contra Costa," and declared that under the circumstances disclosed by the record in this case, the denying of the land use permit was proper. From this judgment plaintiffs appeal.

The first contention of appellants is that the county planning commission and the board of supervisors have no discretion, under the zoning ordinance, to deny the land use permit, and that the granting of such permit is but a ministerial act.

*Assigned by Chairman of Judicial Council.

The county of Contra Costa has adopted a zoning ordinance under which, at the time of the commencement of this proceeding, more than 90 per cent of the unincorporated territory of the county was zoned. The zoning ordinance created districts lettered from A to K, the A district allowing single residential units only, and the other districts allowing uses progressively farther removed from those of the single family unit, until section K is reached, which provides for unrestricted districts. The land of appellants is in section J, in which under the ordinance, use for heavy industry is allowable without the necessity for a land use permit, but use for all other purposes, including residential, is permitted ''after the granting of land use permits therefor.''

That the ordinance contemplates the use of discretion and judgment on the part of the planning commission in the first instance and, later, of the board of supervisors is shown by the master plan of the county, and by reference to the zoning ordinance and its history.

■ The zoning ordinance and the subdivision ordinance of Contra Costa County are sections of the master plan of the county, and the subdivision ordinance provides that ''In all respects the subdivision will be considered in its relation to the adopted or proposed Master Plan of the County.'' This test was a sufficient legislative guide. (*Otis* v. *City of Los Angeles,* 52 Cal.App.2d 605 [126 P.2d 954]; *Wheeler* v. *Gregg,* 90 Cal.App.2d 348 [203 P.2d 37].) The record shows that both the planning commission and the board of supervisors diligently and fairly considered the application for the land use permit in relation to the master plan of the county. The master plan of the county was adopted pursuant to the authority of the legislative body of the county to act and, indeed, the duty to act specifically imposed by the Legislature. (Gov. Code, §§ 65200, 65204, 65250 as they then stood, now supplanted by chapter 3, title 7 of the same code.) It is not to be thought that the legislative body of the county intended, especially after the amendment to its zoning ordinance as set forth below, in view of the state legislative mandate for master planning, to make the subject of land use permits a merely ministerial one.

Evidence that the decision is discretionary and not ministerial is found in the elaborate procedure set forth in section 7 of the zoning ordinance for applying for permits for uses ''for which land use permits are required,'' and the procedure established for the hearing. It is not necessary to set forth

these procedures in detail; briefly they include posting and publication of notice for designated times, a hearing at which all persons favoring or opposing the application shall be heard, a decision by the planning commission "after considering all the facts" and a consideration by the board of supervisors of the planning commission's recommendation at a regular meeting of the board of supervisors.

The history of the ordinance gives additional proof of the character of the requirement for and use of permits. The words "after the granting of use permits therefor," and applying to uses for other than that of heavy industry, were placed in the ordinance after the superior court in an earlier decision had held that the ordinance, as it then stood, did not prevent domestic use in the heavy industrial zone.

It is conceded by appellants that if the land use permit were properly denied, the fact that approval of the subdivision map also was denied is of no practical consequence. ■ The extent of the authority of the governing body in respect of approval of subdivision maps is set forth in the Business and Professions Code, sections 11500 et seq. (the Subdivision Map Act), but the master plan including the Zoning Ordinance of the county based on statutes of equal dignity with the Subdivision Map Act as set forth above, controls the uses to which the land may be put, and may exclude a subdivision entirely, if no constitutional rights be invaded, a question now to be considered.

Appellants' next proposition is that the zoning ordinance barring, as it does, residential use in a heavy industrial district, is unreasonable, confiscatory and unconstitutional, in that the exclusion of residences bears no reasonable relationship to the health, safety, morals or general welfare of the community.

The courts have had but little experience with this type of ordinance, as appears below, and it is something of an inversion of the classical type of zoning as it existed in the earlier days of zoning. However, the plan has become fairly widespread and Rathkopf, The Law of Zoning and Planning (1949) Supplement and Digest (1951), lists 16 among the metropolitan areas employing exclusive industrial zones.

The first case, and the only case cited by both parties on the subject of exclusive industrial zoning is that of *Corthouts* v. *Town of Newington*, 140 Conn. 284 [99 A.2d 112]. In that case the Supreme Court of Connecticut held invalid, as to plaintiff's land an ordinance which proscribed use of that land

for residential purposes and limited the use to industrial development. The court came to its conclusion upon the grounds that there was no proximity of the land to manufactories giving off noxious odors or pernicious gases, that the land was not needed, nor would it be in the near future, for industrial development but probably would remain unused for many years, that the trial court had found no facts to indicate that the ordinance would serve the public health, safety or welfare and that, although residences were forbidden in the area, hotels, schools, hospitals and playgrounds were permitted therein. By no means did the Connecticut court decide that zoning against residential use is invalid *per se*, but, to the contrary, stated that "it is easy to conceive" a situation where legislatures justifiably would prohibit residences near industrial plants emitting gases or using highly inflammable or explosive materials.

In the case of *Comer* v. *City of Dearborn,* 342 Mich. 471 [70 N.W.2d 813], a case not referred to in the briefs, the Supreme Court of Michigan held unconstitutional an application of a zoning ordinance which would bar plaintiff from constructing a motel in a district zoned for heavy industry, the court stating that the record showed that "in such area there are a number of residences, several business places, and very few industrial enterprises. As the situation now is, the neighborhood may not be regarded as an industrial one." The court stated that "it is apparent that guests in the proposed establishment will not be subjected to possible ill effects from industrial enterprises in the neighborhood."

The trial court, in the case before us, found that the proposed subdivision, in which 254 residences are planned to be built, "is bordered on two sides by the Shell Chemical Company, a heavy industrial plant devoted to the processing of hydrocarbon products and the production of a wide variety of chemicals; that on the northern side of the proposed subdivision is the Sacramento Northern Railroad and just beyond that is the main line of the Atchison, Topeka and Santa Fe Railroad; that beyond the Santa Fe Railroad is property of the American Dredging Company; that along the northwest corner of the property a parcel of land was recently developed for use by a hot mix plant, which is the mixing of hot asphalt and tar with sand and gravel for road paving material; that on the west line is a county road and immediately across the county road, a commercial district is being developed to serve a low-cost housing project known as Shore Acres."

The court found that the industry thus far developed is of a type likely to be obnoxious to residential uses, is of the type that emits smoke, fumes, dust "and with a real possibility of emitting toxic gases from time to time." The court concluded that there was ample ground based upon the public health and safety to support the denial of the land use permit.

■ Appellants do not challenge the sufficiency of the evidence to support the findings of the trial court, but rather have argued generally from the decision in the Corthouts case, *supra,* and from the accepted propositions of law that a zoning ordinance is invalid if it will cause property to be unimproved for an unpredictable future, and that such an ordinance must be reasonably necessary and reasonably related to the health, safety, morals or general welfare of the community.

The distinction between the Corthouts case and the one before us in respect of the proximity of industries of the heavy type, which are faced with the problem of control of smoke and gases has been noted. The lack of industries in the proximity distinguishes the Comer case.

■ As to the proposition that a zoning law may not cause property to lie idle for an unforeseeable time (McQuillin, Municipal Corporations, 3d ed., vol. 8, p. 86; *Forde* v. *City of Miami Beach,* 146 Fla. 676 [1 So.2d 642] ; *Corthouts* v. *Town of Newington, supra*), there has been no showing that the land in question is not usable for heavy industrial purposes within a reasonable time, a showing they were obliged to make. (*McCarthy* v. *City of Manhattan Beach,* 41 Cal.2d 879, 891, 892 [264 P.2d 932].) ■ If it be the fact (and it does not necessarily appear to be so) that the value of the parcel is depreciated by the restriction, that, of course, cannot prevent the applicability of the ordinance so long as there is nothing arbitrary or unreasonable about it. (*Village of Euclid* v. *Ambler Realty Co.,* 272 U.S. 365 [47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016] ; *Zahn* v. *Board of Public Works,* 195 Cal. 497 [234 P. 388] ; *City of Los Angeles* v. *Gage,* 127 Cal.App.2d 442, 453 [274 P.2d 34].)

In the case of *McCarthy* v. *City of Manhattan Beach, supra,* the city zoned plaintiff's property exclusively for beach purposes, thus preventing the construction of residences. This case in itself may seem to be sufficient answer to any objection to zoning in an "upward" direction, if residential uses be considered as "higher" than use as a beach. However, the case does not have to do with "upward" zoning in connection with a master plan for a whole area; it is not difficult to

conceive of the use of a beach by the public, even though it might be required to pay for the use, as a "higher" than residential use; the decision was based in part on the danger of constructing residences on pilings; and the Supreme Court was engaged with the subject of the materiality of motive of the zoning body. On the other hand, the court reaffirmed the principle that there will be no substitution of judgment by the court for that of the governing authorities if the classification is "fairly debatable," and the decision shows the broad scope of the police power in zoning classification.

█ Finally, then, it cannot be held that there is anything arbitrary or unreasonable *per se* in the plan of zoning to prevent the so-called "higher" uses from invading a "lower" use area, a plan described by respondents as "exclusive industrial zoning." In fact, the term "higher" as applied to residential uses, or to uses closer than others to domestic purposes, is not an accurate one; for, although the use of property for homes is "higher" in the sense that commercial and industrial uses exist for the purpose of serving family life, the better these secondary uses can accomplish their purpose, the better is the primary use of property served. Moreover, the early decline of new residential districts into blighted areas by their being surrounded by heavy industry is prevented. These considerations, added to those of public health and safety by removing residences from fumes, as set forth above, and viewed in the light of the law that regards the police power as capable of expansion to meet existing conditions of modern life (*Miller* v. *Board of Public Works*, 195 Cal. 477 [234 P. 381, 38 A.L.R. 1479]), place the ordinance with its exclusive industrial feature and the decision of the governing authorities well within the limits of those legislative and administrative acts which are acts where reasonable minds might differ, and, therefore, not subject to judicial interference.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied February 29, 1956, and appellants' petition for a hearing by the Supreme Court was denied March 28, 1956.