## LAMB v. CITY OF MONROE.

1. COVENANTS—ZONING TO EXCLUDE RESIDENCES.

    Finding of trial court that amendments to zoning ordinance whereby residences were prohibited as to some 76 of the 124 lots in plaintiff's subdivision did not violate reciprocal negative easements "now subsisting" *held*, warranted under record showing that property on 3 sides of the tract was devoted to industrial uses and that the residential character originally intended had been lost, at least in part by subversion of such original interest by the subdividers themselves.

2. MUNICIPAL CORPORATIONS—ZONING ORDINANCES—COURTS.

    It is not the function of any court to approve or disapprove municipal zoning ordinances as to wisdom or desirability.

3. SAME—ZONING ORDINANCE—COURTS.

    Courts will not disturb legislative judgment or executive action with respect to a municipal zoning ordinance if the legislative body has authority to act in the premises and the requirements of administrative due process have been observed with respect to the adoption, interpretation, and administration of the ordinance, but courts will protect against arbitrary action by either of the other 2 arms of government.

4. SAME—ZONING ORDINANCE—DEPRECIATION OF VALUE.

    It is not enough to invalidate a municipal zoning ordinance that the value of certain property has been depreciated, provided what has been done does not amount to confiscation.

5. SAME—ZONING ORDINANCE—VALUE—BURDEN OF PROOF—INDUSTRIAL USE.

    Plaintiff owner of 124-lot subdivision on which some 76 lots were placed by amendments to municipal zoning ordinance in an

---

REFERENCES FOR POINTS IN HEADNOTES

[2, 7] 58 Am Jur, Zoning § 231.
[3, 11] 58 Am Jur, Zoning § 229 *et seq.*
[4] 58 Am Jur, Zoning § 140.
[8] 58 Am Jur, Zoning §§ 173–175.
[9] 11 Am Jur, Constitutional Law § 268.

industrial zone excluding residential uses. *held,* not to have carried the burden of proof as to financial loss so as to warrant conclusion that the land is almost useless for industrial purposes.

6. SAME—ZONING ORDINANCE.

Whether a human habitation, or a factory, is a benign use of land, or one malignant, will depend upon the circumstances in each case involving a municipal zoning ordinance.

7. SAME—ZONING—EXCLUSIVE INDUSTRIAL AREA.

Exclusion of residential use of tract of land in an area zoned for exclusive industrial use wherein there was an "accomplished change" to an industrial area dominated by heavy transportation, surrounded by paper plants, a waste canal, a chemical plant, and permeated by noise and odor *held,* within the reasonable limits of permissible legislative and administrative action by city, hence, there was no ground for judicial interference, where the issue of the exclusive industrial use is, at most, debatable.

8. SAME—ZONING—VESTED RIGHTS.

No owner has a vested right in the continuance of a zoning once established by a municipality.

9. PROPERTY—POLICE POWER.

The ownership of property remains subject to the reasonable exercise of the police power.

10. MUNICIPAL CORPORATIONS—ZONING—WORK COSTS—RECORD.

Finding of trial court that owner of tract of 76 lots which was zoned exclusively for industrial use and who sought to have such municipal ordinance declared to be void as to his property which he sought to devote to residential use had not made a showing he had incurred obligations or liabilities for work which he could not escape and of which costs he would be deprived by zoning *held,* supported by the record.

11. SAME—ZONING ORDINANCES—INDUSTRIAL AREA—EXCLUSION OF USE FOR RESIDENCES.

Municipal zoning ordinances and amendments thereof which placed 76 lots of 124-lot subdivision in a zone devoted to industrial uses and excluded residences therefrom *held,* under record presented, to have a reasonable purpose and effect related to public health, welfare, and safety and neither arbitrary nor confiscatory.

' Appeal from Monroe; Weipert, Jr. (William J.), J. Submitted October 16, 1959. (Docket No. 89, Calendar No. 48,070.) Decided November 25, 1959.

Bill by Edward H. Lamb, against the City of Monroe, a municipal corporation, to declare zoning ordinances arbitrary, unreasonable, unconstitutional and void as to his property. Bill dismissed. Plaintiff appeals. Affirmed.

*Orion P. Barron,* for plaintiff.

*Harry A. Lockwood,* City Attorney, for defendant.

*Amici Curiae:*

*Nathaniel H. Goldstick,* Corporation Counsel, and *John F. Hathaway,* Assistant Corporation Counsel, for Detroit.

*Carl W. Forsythe,* City Attorney, for Oak Park.

*Allan G. Hertler,* City Attorney, for Royal Oak.

*John X. Theiler,* City Attorney, for Bay City.

*W. Vincent Nash,* City Attorney, for Saginaw.

*David Morris,* City Attorney, for Kalamazoo.

*James E. Townsend,* City Attorney, for Holland.

SMITH, J. In one aspect this zoning case is the reverse of that normally coming to us. Usually a "lower" use seeks to invade the area of a "higher" use. The filling station sought to be erected in a one-family residential zone is an example. But

here the community seeks to exclude residences from one area zoned industrial and commercial.

Most of the facts are stipulated. The problem is primarily legal. The plaintiff is the owner of 124 lots in Harborview subdivision. These lots he purchased from the United States government. They were used during the last war, and through 1953, as a site for multiple housing units. In 1954 these units were removed, and the property has not been used since that time. The streets in the subdivision, though without curbs, are in reasonable repair. Water and sewer mains are in place on Detroit avenue and Harbor avenue, but connections to individual lots are not in place. Electric and telephone services are adjacent to the subdivision, and a gas main is also in place on Detroit avenue.

The lots in question, it is stipulated:

"Are located south of Rose street. The subdivision south of Rose street is bounded on the south by Mason Run, a natural water course traversing a large section of the city of Monroe north of the River Raisin. Mason Run is also used as a means of disposal for industrial waste by the River Raisin Paper Company and the Consolidated Paper Company both of which have industrial plants immediately west on Mason Run. South of Mason Run and west of the subdivision, the property adjacent to the subdivision is owned by the River Raisin Paper Company upon which is located a paper mill. A large portion of this property is used for the storage of baled paper, a raw material for paper production, and also coal which is also a raw material for paper production. The River Raisin Paper Company presently produces paper in this plant. The property directly east of the lots and south of Telb street is owned by the Cowles Chemical Company. This land is presently vacant but they have announced their intention to build a chemical plant on the premises and place the same in production. The balance of the

property east of the lots is owned by the France-Stone Company, an industrial concern, but their present intentions as to the use of the land is unknown. A small parcel of land on the east side of the subdivision and directly east of Telb street, adjoining Detroit avenue has a quonset steel building on the premises occupied by the board of education. This building is being used as a temporary classroom for elementary sixth grade students because of crowded conditions at Christiancy school located on Lincoln avenue, over 1 mile from the subdivision. The students are transported to and from Christiancy school by bus.

"On Riverview avenue, just north of Maywood avenue and approximately 1 mile from the subdivision is located Cantrick Junior High school. * * *

"The property is within 1/2 mile from the Detroit-Toledo Expressway, a new and modern highway carrying 4 lanes of traffic, which lies east of the property. This highway connects the metropolitan areas of Wayne county and Toledo, Ohio, it being a limited access highway with access points being provided in 2 different locations, 1 within a half mile of the southern boundary of the property and 1 within a half mile of the northern boundary of the subdivision.

"South of the property, approximately 1/4 mile is Elm avenue which traverses the city of Monroe in a general east and west direction north of the River Raisin. At the extreme east end of Elm avenue is the Ford Motor plant employing on the average in excess of 1,500 employees.

"West of the property, approximately 1/4 mile is located the Dixie Highway which also forms the northern boundary of the subdivision. This highway connects the city of Monroe with the Detroit down river areas such as Trenton, Ecorse, Wyandotte, et cetera.

"Each of the above described roads is a primary road for the movement of traffic and each is unrestricted for truck use under the city truck route ordinance. Each of the roads is further designated

as State trunk line highways with the Expressway also being designated as a Federal highway."

We note, also, in surveying the property and the location, that a portion thereof is traversed by a railroad spur track used to supply train service to the Ford Motor Company and also for boxcar storage on the property west of the subdivision. There is no area set aside for schools and the present use of a quonset hut to take the overflow from Christiancy School is to be abandoned and, in the future, the hut to be used as a warehouse.

The situation was summarized by the trial chancellor in these terms:

"It is noted by the court that the proprietors themselves apparently gave up any dream of this area developing into a true residential neighborhood by slashing the plat with an industrial belt, now used for railroad purposes. In addition 5 lots are occupied by a stamping plant which gives forth 'ground shaking noises and vibrations,' to be heard and felt a distance of at least 150 feet. Other commercial uses are evident. The physical surroundings, particularly of the southern third of the subdivision, portray an industrial complex, present on all sides. Plaintiff's property is surrounded by a paper mill on its west and south, a waste canal on its south, while a chemical plant is to be built on the east."

The area, the chancellor also observes—

"being surrounded by highways and railroads requires the prospective user to cross highways and railroads, with ever present lack of safety in the most elementary movements. This would apply to adult and child alike. Every movement to an established school or commercial district would be through an industrial area dominated by heavy transportation.

"The area is bounded on the south by a waste canal, on the south and west by paper plants, and

on the east by a projected chemical plant, giving rise to the ever present evils of noise, odor, and traffic generated by industry. This constitutes a real, existing, and in no way fanciful problem of health, safety, and welfare."

With respect to the zoning situation the parties have stipulated as follows:

"The city of Monroe has zoned the city into different use categories, presently set up under ordinance No 274. Class A and B zoning is exclusively reserved for residential use. Class C is zoned for commercial use, but residences are not excluded. Class D is an industrial zone for industry of normal types without excluding homes or commercial uses. Class E is reserved for industry and commercial and also for the heaviest and most obnoxious type of industry not permitted in other districts. Previous to the amendments complained of by plaintiff class E did not bar residential or commercial uses. Previous to the amendments complained of by plaintiff his property was in the class D district. That portion of his property south of Telb street is now in class E. In September, 1957, ordinance No 706 was passed restricting class E to industrial and commercial use only, with minor exceptions where the use is allied to industrial use. On October 28, 1957, ordinance No 709 was passed extending the class E area through plaintiff's property south of Telb street and also including the River Raisin Paper Company property west thereof and over to the Dixie Highway and north of Elm avenue. Ordinances 706 and 709 were amendments to ordinance 274, which as stated earlier was originally passed in 1936."

It was claimed that 76 of plaintiff's 124 lots were affected by the zoning change, and, as to these, plaintiff's bill of complaint prayed that the above-mentioned ordinances 706 and 709 be decreed arbitrary and unreasonable, as taking property without due process of law, and hence to be unconstitutional

and void. The trial chancellor, after a careful review of the facts and the law, dismissed the bill of complaint.

Appellant first complains that the city of Monroe, by its zoning, has impaired restrictions contained in prior deeds to the property. This claim arises out of the conceded fact that the proprietors of the plat, in the first 40 deeds to lots within the subdivision, and prior to the year 1930, conveyed them subject to a restriction providing substantially as follows:

"This property to be used for residence purposes only, but the grantors reserve the right to designate certain lots within the subdivision for commercial purposes."

It is the position of appellee, however, that, as a matter of fact, the original restrictions have neither been maintained nor relied upon, that their purpose has been frustrated and, accordingly, relief will not be decreed, citing *Frink* v. *Hughes,* 133 Mich 63; *Allen* v. *City of Detroit,* 167 Mich 464 (36 LRA NS 890). Upon this point testimony was taken, the court concluding that the subdivision had lost the residential character originally intended, that the subdividers themselves had subverted their original interest, and, therefore, that the ordinances in question violated no reciprocal negative easements "now subsisting." We cannot, upon the record, find such holding unwarranted.

So far as concerns the remaining claim of error it is pertinent to observe, once again, that it is not the function of this Court, or of any court, to approve or disapprove zoning ordinances as to wisdom or desirability. An appeal lies, it is true, from the legislative determination, but it is to the ballot box, not to the courts. If the legislative body has authority to act in the premises, and the requirements of administrative due process have been observed with

respect to the adoption, interpretation, and administration of the ordinance, we will not disturb the legislative judgment or the executive action. In other words, if there is a debatable question that debate is not for us. But if there is whimsical action, or an arbitrary *ipse dixit,* a legislative judgment has not, in the legal sense, been exercised at all, and we will protect against the arbitrary action. *Cf. Brae Burn, Inc.,* v. *City of Bloomfield Hills,* 350 Mich 425.

In this case much of the argument as to unreasonableness, hardship, and confiscation turns upon the claim that the property under consideration is much more valuable as residential than as industrial property. The disparity in values between zoned and nonzoned property is present in every case, as is the problem of whether the lines of demarcation between zones are drawn in the right places. These matters normally involve no more than the routine exercise of legislative judgment. It is not enough to invalidate an ordinance that the value of certain property is depreciated, provided what has been done does not amount to confiscation. 10A Thompson, Real Property, 1957 Replacement, § 5355, at p 877. If the law were otherwise, there could be no zoning. In the case before us the testimony respecting financial loss was in conflict. Upon review thereof we agree with the chancellor that plaintiff had not "carried the burden of proof as to financial loss." We cannot, therefore, conclude "that this land is almost useless for industrial purposes."

We come, finally, to the novel feature of this case, the exclusion of a so-called "higher" use in a "lower" zone, here, specifically, the exclusion of homes in an industrial area. The statement of the problem, however, in terms of higher use versus lower use, or more desirable versus less desirable uses, is misleading. Whether a human habitation, or a factory,

is a benign use of land, or one malignant, will depend in each case upon the circumstances.

Early zoning concerned itself almost exclusively with preventing the invasion of the so-called higher use by the lower. It was soon realized, however, that the effects of the inverted process might be equally deleterious. The noise, traffic, and fumes of an industrial operation have the same harmful effect upon the homeowners' health and safety when the home goes to the industry as when the industry goes to the home. Likewise the demands of the homeowner upon the industry directed towards an amelioration of such conditions, which are often impossible of curtailment due to the nature of the processes, cause the same undesirable frictions in either case. It was testified that under such circumstances, and as a result of the hazardous and oppressive living conditions, the residences in such a location are gradually abandoned by the original buyers and it becomes a substandard and blighted area. The process was described by the defendant city's planning expert in the following terms:

"The initial buyer is still in there. Then he becomes very unhappy with these conditions when they do develop and he moves out at a great loss usually. The second buyer is going to buy these houses when industry is already developed. He sees these trucks going by. He is not going to pay whatever the initial price was, so therefore we have a bunch of substandard dwellings from this sense, not from a physical sense, but from a surrounding sense; therefore the next person, the second party that gets a hold of that may try to rent it off and split it up into units, try to get more people in at a lower rent. In other words, might try to get 2 families in by trying to rent out rooms, such as happened in Saginaw where industry has blighted the land. This is the overall. In other words, I'm trying to give you a scale of what happens here. In the second

instance, the property is way down in value and it is the first buyer that gets hurt."

Thus it is that we find in 1 Rathkopf and Rathkopf, The Law of Zoning and Planning (3d ed), 14–5, n 6, a list of some 16 areas in which the exclusive industrial zones have been established. The question as to such zoning remains, as before, one of reasonableness under the circumstances. The point to be stressed is that as the supreme court of New Jersey* put it: "there is no rule of law, statutory or constitutional, which ordains that any use has an exalted position in a zoning scheme entitling it to move everywhere as of right." The issue of reasonableness is well illustrated by our recent case of *Comer* v. *City of Dearborn,* 342 Mich 471, 476, 478, where we found that "the neighborhood may not be regarded as an industrial one" and hence that "it is apparent that guests in the proposed establishment will not be subjected to possible ill effects or annoyances resulting from industrial enterprises in the neighborhood." It was held, accordingly, that the application of a zoning ordinance to bar plaintiff from constructing a motel in a district zoned for heavy industry would be unconstitutional. Here, on the other hand, we have an "accomplished change" to an industrial area dominated by heavy transportation, surrounded by paper plants, a waste canal, and a chemical plant, and permeated by noise and odor, the use of which for residential purposes was found by the trial chancellor to be its worst possible use. Under these circumstances we agree with the trial chancellor that the ordinances, containing the exclusion of residences from the industrial area, are well within the limits of permissible legislative and ad-

---

* *Kozesnick* v. *Township of Montgomery,* 24 NJ 154, 169 (131 A2d 1).

ministrative action.*   The most that can be said for plaintiff's position is that the issue of the exclusive industrial use is debatable.   Such being the case, we see no grounds for judicial interference.

We find no merit in the argument made as to "retroactive" zoning, which apparently refers to the doctrine of impairment of vested rights.   No owner has a vested right in the continuance of a zoning once established.   The ownership of property remains subject to the reasonable exercise of the police power. We need not, for. the purposes of this case, define the limits of the substantial work requirement of *Sandenbürgh* v. *Michigamme Oil Co.,* 249 Mich 372.   It was the finding of the trial chancellor, supported by the record, that no showing had been made that the property owner had incurred obligations or liabilities for the work which he could not escape and of which costs he would be deprived by the zoning.

We conclude that the zoning ordinances before us have a reasonable purpose and effect related to public health, welfare, and safety, and that they are neither arbitrary nor confiscatory.   The decree is affirmed.   Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.

---

* See *Roney* v. *Board of Supervisors of Contra Costa County,* 138 Cal App2d 740 (292 P2d 529).