JOHN C. GRUBEL and CORNELIA M. GRUBEL, his wife, Plaintiffs

v.

BERNARD A. E. MacLAUGHLIN, WILLIAM J. BAAR, WINONA L. PHAIRE, J. KARL WILLIAMS, FRANK E. STEWART, EMILE F. GOW, STANLEY KISSLER, ETHEL KISSLER, WALTER ADAM, NORMA ADAM, and the GOVERNMENT OF THE VIRGIN ISLANDS, Defendants

Civil No. 86-1966

District Court of the Virgin Islands

Div. of St. Croix

Christiansted Jurisdiction

Filed June 18, 1968

*See, also, 286 F.Supp. 24*

492

493

494

WILLIAM A. PALLME, ESQ., Charlotte Amalie, St. Thomas, Virgin Islands, *for plaintiff*

YOUNG and ISHERWOOD, Christiansted, St. Croix, Virgin Islands, *for defendant*

MARIS, *Circuit Judge*

## OPINION

The plaintiffs John C. Grubel and his wife Cornelia M. Grubel, owners of land situated in St. Croix, filed a complaint under the Virgin Islands Declaratory Judgment Act, 5 V.I.C. §§ 1261 et seq., asserting two causes of action. The first was against their grantors and eight other persons to whom were conveyed parcels of land out of the same original tract of land, in which cause the plaintiffs seek a judgment declaring unenforceable a certain restrictive covenant contained in their deed. In the second cause of action, brought against the Government of the Virgin Is-

lands, the plaintiffs seek a judgment declaring invalid an amendment to the Virgin Islands Zoning and Subdivision Act, 29 V.I.C. §§ 260 et seq., as it applies to their property. From the pleadings and the evidence the following facts are found:

The plaintiffs own, as tenants by the entirety, a single tract of land totaling approximately 1.337 acres, part of which is designated on Public Works Drawing No. 608, which is recorded in the Office of the Public Surveyor, Christiansted, St. Croix, as Parcel 1C of Estate Golden Rock consisting of 0.527 acres and the remainder as Parcel 2D of Estate Orange Grove consisting of 0.810 acres.

The defendants Bernard A. E. MacLaughlin and William J. Baar were the owners of a single tract of land of approximately 6.96 acres, part of which was designated as Parcel 2A of Estate Orange Grove consisting of 1.71 acres, part as Parcel 1A of Estate Golden Rock consisting of 4.73 acres, and the remainder as Plot No. 1 Estate Little Princess consisting of 0.52 acres, out of which they conveyed to the plaintiffs the land described in the preceding paragraph by deed dated September 1, 1960, and recorded in the Recorder's Office of St. Croix on September 26, 1960, in P.C. 14, page 20, No. 320-1961.

The deed to the plaintiffs recited that the conveyance was

"SUBJECT, HOWEVER, to the restriction, which shall be deemed a covenant running with the land, that the property above described shall be used primarily for residential purposes but may be used as a guesthouse and/or printing establishment or for a home industry in connection with a dwelling house so long as a nuisance is not created thereby."

At various times the defendants MacLaughlin and Baar conveyed parcels out of their tract of land to the other individual defendants who, with the defendants MacLaughlin and Baar, are the owners of the land comprising the

dominant tenement with respect to the restrictive covenant above described.

At the time of the conveyance to the plaintiffs in 1960 the zoning law of the Virgin Islands permitted the use of plaintiffs' property for residential purposes.

By the Act of July 2, 1965, No. 1477, 1965 V.I. Sess. L. 368, the Virgin Islands Legislature amended the Virgin Islands Zoning and Subdivision Act, 29 V.I.C. §§ 260 et seq., by adding, inter alia, to the schedule of zoning district requirements, 29 V.I.C. § 266 App. I, a new C-2 Zone entitled "Neighborhood Shopping Centers" intended to "provide for the development of a planned and organized group of compatible retail shops grouped under a commonly designed site plan for the convenient needs of a neighborhood area". In a C-2 Zone the use of property for residential purposes is not permitted.

The plaintiffs' land was subsequently and now is classified in a C-2 Zone on the Official Zoning Map of the Virgin Islands.

The plaintiffs' land abuts for a distance of about 150 feet the southwest side of the North Side Road, a main much travelled public highway leading from Christiansted to Little Princess and beyond, and it extends to the southwest about 353 feet along a side road rising in elevation about 110 feet from its front on the North Side Road to its rear line. The land is unimproved but immediately to the southeast of it land fronting on the North Side Road has been developed for various commercial purposes since the year 1960. This development has made a substantial change in the character of the general area in which the plaintiffs' land lies although not in the particular parcels of land owned by the plaintiffs and the individual defendants.

The plaintiffs' land, presently unimproved, is so situated with respect to location, slope and grades as to be best

adapted to the commercial use permitted in a C-2 Zone and I find this to be its highest, best and most advisable use. Its use for such purposes would not interfere with the continued use for residential purposes of those portions of the lands of the individual defendants which are now devoted to that use and which comprise the dominant tenement and the value of those lands for the continued development for residential use which is now taking place there will not be adversely affected by the use of the plaintiffs' land for purposes permitted in a C-2 Zone and will suffer no deterioration in market value therefrom. The present zoning of the area, which places the plaintiffs' land and the lands of certain individual defendants which also abut the North Side Road in a C-2 Zone and the remaining land of the individual defendants in a residential zone, conforms to the changes in the character of the area and the differences in the uses for which the respective tracts are available. The individual defendants' lands which remain in the residential zone are situated higher on the hillside and are thus separated by topography from the lands along the highway now zoned for commercial uses.

The fair market value of the plaintiffs' land is $67,000 if restricted to commercial use permitted in a C-2 Zone, $57,500 if restricted to residential use, and $5,000 if it could not be devoted to either of these uses.

■ The jurisdiction of the court is not claimed to be based, as the Government argues, on the Federal Declaratory Judgments Act, 28 U.S.C. § 2201, but rather on the Uniform Declaratory Judgments Act in force in the Virgin Islands, 5 V.I.C. ch. 89. Under the latter Act I am satisfied that this court has jurisdiction of the suit.

Two questions are raised by this suit. The first question which I shall consider is whether the Virgin Islands Zoning and Subdivision Act, 29 V.I.C. §§ 260 et seq., is arbitrary, unreasonable, confiscatory and, therefore, invalid insofar

as the Act, as amended by the Act of July 2, 1965, No. 1477, authorizes the plaintiffs' land to be placed in a C-2 Zone restricted to commercial use only. The second question is whether the covenant in the plaintiffs' deed which restricts their land primarily to residential use is enforceable in view of the zoning restrictions, if valid, and the somewhat changed character of the general locality.

Zoning regulations constitute a valid exercise of the police power when they have a rational relation to the public health, safety or general welfare of the community. Euclid v. Ambler Realty Co., 1926, 272 U.S. 365. The right of every owner of property to use it in his own way and for his own purposes existed before the adoption of the Constitution and is guaranteed by that instrument. Section 3 of the Revised Organic Act of the Virgin Islands, 48 U.S.C.A. § 1561, assures that private property may not be taken for public use except upon payment of just compensation. These rights, however, are subject to the exercise of the police power under which new burdens may be imposed upon property and new restrictions placed upon its use when the public welfare so demands. The type of zoning regulation with which we are here concerned—a regulation which does not include residential use of property within its permitted uses—is a rather recent innovation. The presence of homes in industrial and commercial areas has been a matter of every-day experience. But under the modern view, as we shall see, a comprehensive plan for the development of separate districts for residential and commercial purposes may be appropriate, and, indeed, under some circumstances, necessary.

It is settled that the exclusion of all industrial and commercial establishments from residential districts may bear a rational relation to the health and safety of the community. Euclid v. Ambler Realty Co., 1926, 272 U.S.

365; City of Aurora v. Burns, 1925, 319 Ill. 84, 149 N.E. 784. And it has likewise been held that an ordinance excluding residences from an area zoned for industrial and commercial purposes may, under particular circumstances, be a valid exercise of the police power. Lamb v. City of Monroe, 1959, 358 Mich. 136, 99 N.W.2d 566; People v. Village of Morton Grove, 1959, 16 Ill.2d 183, 157 N.E.2d 33, 35–36; Roney v. Board of Supervisors of Contra Costa County, 1956, 138 Cal. App.2d 740, 292 P.2d 529; Corthouts v. Town of Newington, 1953, 140 Conn. 284, 99 A.2d 112, 114, 38 A.L.R.2d 1136, 1139–1140.

 Whether such a zoning regulation is valid depends, of course, upon the facts of the particular case. Thus an ordinance has been held valid which excluded residences from an industrial zone where there was no showing that the land thus restricted was not usable for industrial purposes within a reasonable time. Roney v. Board of Supervisors of Contra Costa County, 1956, 138 Cal.App.2d 740, 292 P.2d 529. On the other hand an amendment to a zoning regulation was held unreasonable and confiscatory which rezoned property from residential to solely industrial use where it was shown that the land was adaptable to and in demand for residential purposes but was not needed, and would not in the near future be needed, for industrial development. Corthouts v. Town of Newington, 1953, 140 Conn. 284, 99 A.2d 112, 38 A.L.R.2d 1136.

 The basic rationale underlying the separation of residential from commercial areas—whether the particular case involves the exclusion of businesses from a residential area or the converse, the exclusion of dwellings from a business area—is the same. It is recognized that sound social, economic and governmental policy may dictate a separation of residential areas from commercial and industrial areas. Duffcon Concrete Products v. Borough of Cresskill, 1949, 1 N.J. 509, 64 A.2d 347, 351. The grow-

ing complexity of our civilization, the multiplying forms of industry, the dangers of heavy traffic in mixed residential and commercial districts, the noise, the fumes—are all factors which may well justify the allocation of industries, commercial businesses and dwellings to separate districts in order to promote and preserve the general welfare of the community. Euclid v. Ambler Realty Co., 1926, 272 U.S. 365, 392; City of Aurora v. Burns, 1925, 319 Ill. 84, 93–95, 149 N.E. 784, 788; Lamb v. Monroe, 1959, 358 Mich. 136, 99 N.W.2d 566.

 Nor is it valid any longer to consider the problem in terms of a "higher" use or a "lower" use. The Supreme Court of Illinois has rejected the assertion that a zoning ordinance excluding residential development in commercial and industrial districts conflicted with the generally acknowledged principle that zoning was intended to preserve rather than to restrict dwellings, saying: "the only constitutional limitation upon a municipality's power to exclude future residences from commercial and industrial districts is that the exclusion bear a substantial relationship to the preservation of the public health, safety, morals, or general welfare." People v. Village of Morton Grove, 1959, 16 Ill.2d 183, 157 N.E.2d 33, 35–36. And in Lamb v. City of Monroe, 1959, 358 Mich. 136, 99 N.W.2d 566, 570–571, the court observed that the statement of the problem in terms of higher use versus lower use, or more desirable versus less desirable use, was misleading; the question of such zoning being one of reasonableness under the circumstances of the case. See, also, Roney v. Board of Supervisors of Contra Costa County, 1956, 138 Cal.App. 2d 740, 292 P.2d 529, 532, where the court stated:

". . . it cannot be held that there is anything arbitrary or unreasonable per se in the plan of zoning to prevent the so-called 'higher' uses from invading a 'lower' use area, a plan described by respondent as 'exclusive industrial zoning'. In fact, the term 'higher'

as applied to residential uses, or to uses closer than others to domestic purposes, is not an accurate one; for, although the use of property for homes is 'higher' in the sense that commercial and industrial uses exist for the purpose of serving family life, the better these secondary uses can accomplish their purpose, the better is the primary use of property served. Moreover, the early decline of new residential districts into blighted areas by their being surrounded by heavy industry is prevented. These considerations, added to those of public health and safety by removing residences from fumes, as set forth above, and viewed in the light of the law that regards the police power as capable of expansion to meet existing conditions of modern life, . . . place the ordinance with its exclusive industrial feature and the decision of the governing authorities well within the limits of those legislative and administrative acts which are acts where reasonable minds might differ, and therefore, not subject to judicial interference."

It is thus clear that there is no rule of law, statutory or constitutional, which ordains that any particular use has an exalted position in a zoning scheme entitling it to move everywhere as of right. Kozesnik v. Montgomery Twp., 1957, 24 N.J. 154, 131 A.2d 1, 9.

With these principles in mind, and indulging, as I must, the strong presumption in favor of the validity of a legislative enactment, I turn to consider whether the Virgin Islands Zoning and Subdivision Act, No. 801, 1961 V.I. Sess. L. 279, 29 V.I.C. §§ 260–277, as amended by the Act of July 2, 1965, No. 1477, 1965 V.I. Sess. L. 358, 29 V.I.C. § 266 App.I, and the inclusion thereunder of plaintiffs' property in a C-2 Zone on the Official Zoning Map were valid exercises of the legislative power.

█ By the Zoning and Subdivision Act of 1961 former sections 223 and 224 of title 29, V.I.C., which related to zoning, were repealed and broader and more precise provisions substituted. The stated purpose of the new zoning legislation was to benefit the Virgin Islands by (1) promoting the public health, safety, morals and general welfare; (2) promoting orderly growth, expansion, and de-

velopment; (3) lessening congestion in the roads and streets; (4) protecting the established character and social and economic value of agricultural, residential, commercial, industrial, recreational and other areas; (5) securing safety from fire and other damages; (6) providing adequate light and air; (7) preventing the overcrowding of land; (8) avoiding undue concentration of population; and (9) facilitating adequate provision of transportation, water, sewerage, schools, parks and other public requirements. 29 V.I.C. § 260.

 The Virgin Islands Planning Board had been for many years authorized to prepare comprehensive master plans, maps, charts and explanatory matter for the general purpose of accomplishing a coordinated, adjusted and harmonious development of the islands which would best promote the health, safety, morals, order, convenience, prosperity or the general welfare, 29 V.I.C. § 221. Under the Zoning and Subdivision Act the Board was directed to prepare official zoning maps dividing the islands into zones or districts, which after public hearings were to be submitted to the Governor for his approval and by him in turn to the Legislature for its approval. Following legislative approval, the official zoning maps, or changes or amendments thereto, were to be authenticated by the Government Secretary of the Virgin Islands. 29 V.I.C. § 262. The Act provided that an existing lawful use prior to the adoption of the new regulations could continue as a permitted nonconforming use. 29 V.I.C. § 265. Section 266 provided that the zoning district requirements should be set forth in a schedule to that section marked Appendix I. In accordance therewith the schedule set forth the various zones, and the uses permitted in each zone, as well as the reasons for establishing the particular zones. The zones originally included were R-10 Zone for one or two family residential

use; R-4 Zone for one to four-family residential use; C-Zone for central business districts; I-1 Zone for warehouses, storage and light industrial use in which the only residential use permitted was living accommodation for caretakers or watchmen; and I-2 Zone for heavy industrial and essential service specially excepting therefrom residential use. The schedule to section 266 was amended by the Act of July 2, 1965, No. 1477, which changed the designation C-Zone to C-1 Zone and added new C-2 and C-3 Zones. The new C-2 Zone, entitled "Neighborhood Shopping Centers" was stated as intended to provide for the development of a planned and organized group of compatible retail shops constructed under a commonly designed site plan for the convenient needs of a neighborhood, and it permitted uses for supermarkets, various retail stores and general services. Residential use was, however, not permitted. Developers of a neighborhood shopping center were required to submit for approval to the Planning Board a preliminary development plan showing a unified and organized arrangement of buildings, off-street parking and loading areas, internal traffic circulation, service facilities and landscaping. Thereafter the plaintiffs' land was included on the Official Zoning Map in a new C-2 Zone. It is with this particular zoning that we are here concerned.

The trend in recent years to suburban living has brought about a greater use of the automobile and the need for more parking facilities in the shopping habits of a great number of people and has brought into existence a new type of business district different in substantial respects from other groupings of retail establishments. This new category has been labelled a "neighborhood shopping center" and is particularly characterized by off-street parking facilities and a uniform plan or scheme of development. The rezoning of property to permit the erec-

504

tion of shopping centers has been sustained where such action was reasonable under the particular circumstances of the case, did not conflict with any comprehensive plan and was for the welfare of the community. A zoning change permitting the construction of a shopping center does not constitute an instance of spot zoning, as a general rule, when it is done in furtherance of the convenience of the community in accordance with a comprehensive plan,[1] and not merely for the benefit of particular landowners, Cassel v. Mayor and City Council of Baltimore, 1950, 195 Md. 348, 73 A.2d 486, 489; Temmink v. Board of Zoning Appeals, 1954, 205 Md. 489, 109 A.2d 85, 88; Pecora v. Zoning Commission of Town of Trumbull, 1958, 145 Conn. 435, 144 A.2d 48; Adams v. City of Richmond, 1960, (Ky.) 340 S.W.2d 204, 206; Bob Jones University, Inc. v. City of Greenville, 1963, 243 S.C. 351, 133 S.E.2d 843, 848; Annotation, Zoning Regulation as to Shopping Centers, 76 A.L.R. 2d 1172, 1175, 1181; 8 McQuillin, Municipal Corporations, (Rev. 1965) § 25.115.

The C-2 Zone in which the plaintiffs' land is included adjoins a presently developed commercial area along the North Side Road. The creation of a neighborhood shopping center in this zone is, I am satisfied, in harmony with the orderly growth of the locality. It is not contended in this case that the change of classification of the plaintiffs' land on the Official Zoning Map was not done in the manner provided by law; or that there is no need for a shopping center in that particular location; or that the location is inappropriate or not in harmony with the comprehensive plan; or that it is not for the general welfare of the

---

[1] Haar, "In Accordance with a Comprehensive Plan", 68 Harv. L. Rev. 1154 (1955); 8 McQuillin, Municipal Corporations, (rev. 1965) § 25.110, 1 Rathkopf, The Law of Zoning and Planning (3d ed.) 15-3; Rockhill v. Chesterfield Township, 1957, 23 N.J. 117, 128 A.2d 473; Kuehne v. Town of East Hartford, 1950, 136 Conn. 452, 72 A.2d 474, 478. See, also, A Model Land Development Code, published by the American Law Institute, Tentative Draft No. 1 (April 24, 1968).

community; or that the change in classification was made for the benefit of any particular landowner.

How best the purposes of zoning can be accomplished is primarily in the discretion of the public authorities vested with zoning powers. A court, in construing a zoning law, will not set aside the determination of the legislature unless it is clear that the law is an arbitrary or irrational exercise of power having no substantial relation to the public health, morals, safety or general welfare. Whenever the validity of a zoning classification is fairly debatable, the legislative judgment prevails.

Since modern zoning plans must necessarily make provision for commercial development in appropriate areas, and the Virgin Islands Zoning and Subdivision Act so provides, there appears to be nothing inappropriate in providing for a neighborhood shopping center in the C-2 Zone here in question which was designated for such a purpose on the Official Zoning Map with the approval of the Virgin Islands Legislature. Under the facts of this case I cannot hold that the Zoning and Subdivision Act which, as amended by the Act of 1965, creates C-2 Zones devoted to neighborhood shopping centers in which residential use is not permitted, and the inclusion of the plaintiffs' land in such a zone, are so unreasonable and without relation to the welfare of the community or the stated purposes of the Zoning and Subdivision Act as to be arbitrary or confiscatory. Considering the action of the Legislature and the Planning Board in the light of the established principles to which I have referred, I conclude that these actions were fairly within the police power of the Legislature and were valid.

Having thus concluded that the action of the Virgin Islands Legislature in creating the C-2 Zones was a valid exercise of its police powers and that the inclusion

of the plaintiffs' land in such a zone was also valid, I turn to the question whether the restrictive covenant in the plaintiffs' deed is nonetheless enforceable against them. We start with the proposition that private persons, in the exercise of their constitutional right of freedom of contract, may ordinarily impose whatever restrictions upon the use of land which they convey to another that they desire to impose. Such restrictive covenants remain enforceable by those in whose favor they run. It will be recalled that the covenant contained in the plaintiffs' deed restricts the use of their land "primarily for residential purposes." Ordinary commercial uses are not permitted. The plaintiffs contend, however, that the zoning regulation under which their land is restricted to commercial use supersedes the covenant in their deed and renders it unenforceable. It is obvious that there is a direct conflict between the zoning regulation and the restrictive covenant, the latter restricting the land to a type of use which the subsequently enacted zoning regulations prohibits and renders unlawful.

Section 568 of the Restatement of the Law of Property of the American Law Institute[2] provides:

"568. BY ZONING ORDINANCE.

"The obligation arising out of the making of a promise that land of the promisor shall be used in a specified way is extinguished by a zoning ordinance or similar legislation only to the extent to which the observance of the promise is rendered unlawful by the ordinance or other legislation.

"*Comment:*

"...

"d. *Inconsistency between promise and ordinance—Validity of ordinance.* If the ordinance requires or forbids a use forbidden or required, as the case may be, by the promise, the ordinance will prevail in so far as it is legally effective to accomplish its intended

---

[2] The restatements state the rules of common law to be applied in the Virgin Islands in the absence of local law to the contrary. 1 V.I.C. § 4. Here there is no contrary local law.

507

purpose. The rule stated in this Section assumes its effectiveness in this respect. Such effectiveness is dependent upon the satisfaction of constitutional limitations upon the destruction by legislative action of vested property interests."

Here the obligation of the plaintiffs under the restrictive covenant to use their land for residential purposes only has been extinguished by the zoning regulation which makes that use unlawful. Since, as we have seen, the zoning regulation is valid, it necessarily follows that the restrictive covenant in the plaintiffs' deed is unenforceable by the individual defendants. This being so it is unnecessary for me to consider whether the covenant has also been rendered unenforceable by the change which has taken place in the character of the neighborhood immediately to the southeast of the plaintiffs' land.

 I conclude that the Virgin Islands Zoning and Subdivision Act, 29 V.I.C. §§ 260 et seq., as amended by the Act of July 2, 1965, No. 1477, to provide for a C-2 Zone and the action of the Planning Board, the Governor and the Legislature in placing the plaintiffs' land in such a zone are valid, and that in the light of this valid action the restrictive covenant in the plaintiffs' deed is not enforceable by the individual defendants.

A judgment will be entered so declaring.