(No. 34972.—

THE PEOPLE *ex rel.* Skokie Town House Builders, Inc., Appellee, *vs.* THE VILLAGE OF MORTON GROVE *et al.,* Appellants.

*Opinion filed March 20, 1959.*

JOHN B. MOSER, and THOMAS A. MATTHEWS, both of Chicago, for appellants.

RICHARD WEINBERGER, of Chicago, for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The village of Morton Grove and Timothy Walsh, its building commissioner, appeal directly to this court from a summary judgment entered in the circuit court of Cook County upon the *mandamus* petition of Skokie Town House Builders, Inc., ordering the appellants to issue necessary permits for the construction of four town-house buildings. A constitutional issue was presented to and decided by the trial court.

The case was tried upon the pleadings and stipulations of facts. Appellee is engaged in the business of constructing and selling residential buildings. On June 20, 1957, it purchased certain lots in a class E commercial district which, under the ordinance then in force, were also available for group or row-dwelling usage. Immediately thereafter, it had plans and specifications prepared for the construction of four town houses upon the lots and had the property surveyed. On June 25 appellee applied for the necessary building permits which were issued the same day. A few days later the building commissioner revoked the permits. The village officials refused to reissue the permits and the appellee in March, 1958, filed its petition for a writ of *mandamus*. On April 22, 1958, the 1946 zoning ordinance was amended so as to prohibit the future construction of any dwelling units in districts other than those designated as dwelling districts.

The appellants in their answer to the petititon contended that the deputy commissioner who issued the permits had no authority to do so and that they were properly revoked because the appellee's proposed buildings failed by some nine inches to meet the minimum rear-yard requirements. In addition, they pleaded the amended zoning ordinance as an affirmative defense.

In its reply, Skokie Town House Builders, Inc., argued that the rear-yard deficiency was not asserted by the village until after the *mandamus* action was instituted, and that

upon being advised of this deficiency, it corrected its building plan to remove the objection, but the building commissioner refused to accept the revised plot plan. It also contended that the zoning amendment was void in that it violated the due process clauses of both the State and Federal constitutions and was not, in any event, applicable to appellee's property because it had acquired a vested right in the 1946 ordinance by reason of its prior expenditures in reliance thereon.

Thereafter appellee filed its motion for summary judgment supported by the affidavit of its secretary which related in some detail the nature of the expenditures. The appellants filed motions to strike the reply and affidavit for alleged deficiencies and requested an extension of time to file counteraffidavits. Upon hearing, the court entered an order denying the motions of appellants and granting summary judgment to appellee.

Appellants' first contention is that the trial court erred in issuing the writ of *mandamus* because the appellee failed to exhaust its administrative remedies. At the time appellee applied for the permit, the zoning ordinance required a rear yard of 24.742 feet but the plans and specifications contained a plot plan showing a rear yard of only 24 feet. After appellee filed its petition for a writ of *mandamus,* it learned of appellants' objection and engaged an architect to prepare a revised plot plan showing a rear yard of a full 25 feet. It then tendered this amended plot plan to the building commissioner who refused to accept it for filing without even examining it. This fact was brought out in appellee's reply and it consented therein to the building permit being issued in accordance with the revised plot plan. The *mandamus* order of the trial court directs that the permits issue in accordance with the plans previously filed as amended by the revised plot plan.

Appellants argue that the court should not have ordered the writ to issue because the building commissioner had

refused the amended plot plan and appellee failed to appeal to the zoning board of appeals as provided by section 73—3(D) of the Revised Cities and Villages Act. (Ill. Rev. Stat. 1957, chap. 24, par. 73—3(D).) Section 73—3(D) provides that "the board of appeals shall hear and decide appeals from and review any order, requirement, decision, or determination made by an administrative official * * *." In this case, however, there was no order, requirement, decision or determination to appeal from. The record shows that the building commissioner refused to accept the revised plot plan for filing without even examining it. Thus, there was nothing for the board of appeals to review. We are of the opinion that the trial court did not err in considering the revised plot plan under the circumstances of this case. The only objection to the plans and specifications under the 1946 zoning ordinance was the rear-yard deficiency which was obviated by the revised plot plan. The order appealed from contemplates and provides for the rear-yard requirement and is, therefore, not in conflict with the 1946 zoning ordinance.

Appellants next contend that the trial court erroneously concluded that the amending ordinance was unconstitutional. Appellee argues that the trial court properly held this zoning ordinance excluding future residential development in commercial and industrial districts void *per se*. It asserts that such an ordinance conflicts sharply with the generally acknowledged principle that zoning is intended to preserve rather than to restrict dwellings.

Most of the earlier zoning ordinances were based upon this principle, and, generally, the districts of less restricted uses admitted the uses of the more restricted districts. (Babcock, Classification and Segregation Among Zoning Districts, 1954 Ill. Law Forum 186, 204; Baker, Legal Aspects of Zoning, p. 66; Yokley, Zoning Law & Practice, pp. 64, 66.) Recently, however, many municipalities have adopted noncumulative type zoning ordinances which

exclude most, if not all, future residences from commercial and industrial districts. (Babcock, 1954 Ill. Law Forum 186; Kneier, The Future of Zoning, 1954 Ill. Law Forum 281; Rathkopf, The Law of Zoning and City Planning, 296 (3d ed. 1956).) This is the first case presented to us which involves such an ordinance. The primary question is whether such a limitation upon the scope of municipal powers is embodied as a limitation in law under the constitution and the zoning statutes.

It has long been the rule that zoning is a proper exercise of the police power of the State and that the power to zone can be exercised by the legislature or by the municipalities to which this power may be delegated. (*City of Aurora* v. *Burns,* 319 Ill. 84.) Governmental restrictions on the use of private property can be imposed, however, only if they bear a substantial relationship to the preservation of the public health, safety, morals or general welfare. (*Western Theological Seminary* v. *City of Evanston,* 325 Ill. 511.) Thus, the only constitutional limitation upon a municipality's power to exclude future residences from a commercial and industrial districts is that the exclusion bear a substantial relationship to the preservation of the public health, safety, morals, or general welfare.

There are many arguments in favor of this type of ordinance, although such an ordinance is a radical departure from our thinking and opinions in the past. We note a few. The dangers of heavy traffic are greater in mixed residential-industrial or residential-commercial districts than in districts devoted to just one purpose. Industrial and commercial districts are not good places to bring up families from a health standpoint; and the presence of children in and about industrial and commercial districts leads to a demand for school, park and play-ground facilities in an area where there is either no land available or the land available is ill-suited to such uses. In short, whether industry and commerce are excluded from the residential

areas, or residences from industrial and commercial areas, it is not unreasonable for a legislative body to assume that separation of the areas would tend in the long run to insure a better and a more economical use of municipal services, such as schools, providing police protection, preventing and fighting fires, and better use of street facilities. The general welfare of the public may be enhanced if industry and commerce are provided with a favorable climate. The sale of a few lots at important points in a district may make industrial or commercial expansion impossible or prohibitively expensive. To protect the residents in the district, traffic may be slowed down unduly and thus detract from the efficiency of production and trade. In final analysis, it seems clear that industry and commerce are also necessary and desirable and that a proper environment for them will promote the general welfare of the public. We are of the opinion that the exclusion of residences from a commercial or industrial district is within the police power of the State.

It is elementary that a municipality possesses no inherent police power and can only legislate upon or with reference to that which is authorized by the General Assembly. (*Father Basil's Lodge, Inc.* v. *City of Chicago*, 393 Ill. 246.) Thus, a municipality's power to exclude future residences from commercial and industrial areas must be found in article 73 of the Revised Cities and Villages Act. (Ill. Rev. Stat. 1957, pars. 72—1 to 73—12.) Section 73—1 delegates to municipalities the power, "(4) to classify, regulate and restrict * * * the location of buildings designed for specified industrial, business, residential, and other uses;" and the same section delegates the power "(7) to prohibit uses, buildings, or structures incompatible with the character of such districts." We are of the opinion that these delegations of power encompass the power to exclude future residences from industrial and commercial districts.

Caution will have to be used in the application of non-

cumulative ordinances because of the existing admixture of residential, commercial and industrial uses. The present character of a district may make an ordinance unreasonable and discriminatory, or there may be no reasonably immediate use of the land for commercial purposes, thereby denying an owner his constitutional privileges with respect to his land, or an ordinance may not be part of a comprehensive and consistent plan. We are not beset by such questions in this case. There are no facts pleaded to indicate that the application of the amended ordinance to the lots in question would be discriminatory, and we have indicated that the ordinance is not discriminatory as a matter of law. The amended ordinance was enacted in the exercise of a power conferred upon the village of Morton Grove and is presumably valid. *Kinney* v. *City of Joliet,* 411 Ill. 289.

The trial court could properly order the writ of *mandamus* to issue only if the amended ordinance could not have been applied to the appellee. Appellants contend that the trial court erroneously concluded that appellee had acquired a vested right under the 1946 zoning ordinance which would entitle it to complete the construction of its town houses as originally authorized. Appellants' contention is based on two propositions. First, a property owner cannot, by making expenditures or incurring obligations in contemplation of putting his land to a certain use, prevent the municipality from rezoning his property and applying the amended zoning ordinance against his property to prevent that use. They state that the decision in *Deer Park Civic Ass'n* v. *City of Chicago,* 347 Ill. App. 346, to the extent that it is inconsistent with this proposition is incorrect. Second, they did not admit appellee had made the expenditures and incurred the obligations as alleged, and, therefore, a summary judgment holding that appellee had acquired a vested right by reason of prior expenditures and obligations was not warranted.

Appellants' first proposition has been eliminated by our holding in *Fifteen Fifty North State Building Corp.* v. *City of Chicago,* 15 Ill.2d 408, (filed subsequent to their brief) wherein we adopted the view expressed in the *Deer Park Civic Ass'n case* that where there has been a substantial change of position, expenditures or incurrence of obligations made in good faith by an innocent party under a building permit or in reliance upon the probability of its issuance, such party has a vested property right and he may complete the construction and use the premises for the purposes originally authorized, irrespective of subsequent zoning or a change in zoning classification.

The appellee in support of its motion for summary judgment filed the affidavit of its secretary which related expenditures it made and obligations it incurred in reliance on the 1946 ordinance and the probability of a building permit being issued. The affiant stated that certain sums had been paid for plans, plot plans, and committment for mortgage loan; together with $1,630 for permits and contractor's permits and $200 as a deposit for sidewalks to the appellant village. He also stated that an oral general construction contract had been entered into for $195,758.56.

It was stipulated by the parties that the petitioner caused to be prepared plans and specifications for the construction of four town houses of four units each and had caused the property to be surveyed. It was further stipulated that appellee had purchased the land upon which the town houses were to be built for $26,000. Appellee admitted in its second amended answer to the petition that $1,630 had been paid to it for the permits and $200 for a sidewalk deposit.

It will thus be noted that, while there is no admission of the exact amounts paid, it was stipulated that plans and specifications and plot plans had been procured. Furthermore, the expenditure of $1,830 was admitted and the

record shows no repayment or tender. The conclusion that there were admitted substantial changes of position and expenditures within the meaning of the rule in the *Fifteen Fifty North State Building Corp. case* is, in our opinion, justified.

Appellants complain that their written interrogatory was ignored and that their motion to strike the affidavit in support of the motion for summary judgment should have been granted. They also allege error in the Court's refusal to extend time for preparing counter-affidavits and taking depositions. None of these objections is well taken. They primarily deal with and were aimed at the alleged construction contract. As we have pointed out, there was a sufficient showing of expenditures so that it was unnecessary for the trial court to go into the question of the incurring of general contract obligations.

On the basis of the record before us, we are of the opinion that the trial court did not err in holding that appellee had acquired a vested right under the 1946 zoning ordinance which would entitle it to complete the construction of the town houses and that it properly ordered a writ of *mandamus* to be issued. The judgment of the circuit court of Cook County is, therefore, affirmed.

*Judgment affirmed.*