INDUSTRIAL NATIONAL MORTGAGE CO. *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (1st Division)    No. 80-2480

Opinion filed April 20, 1981.

Stanley Garber, Corporation Counsel, of Chicago (Robert R. Retke and Maureen J. Kelly, Assistant Corporation Counsel, of counsel), for appellants.

Barry B. Nekritz and Fred L. Lieb, both of Aaron, Schimberg, Hess, Rusnak, Deutsch & Gilbert, of Chicago, for appellees.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendants, the City of Chicago (the City), Joseph Fitzgerald, commissioner of the Department of Buildings of the City of Chicago (the Commissioner), and Harry L. Manley, zoning administrator of the City of Chicago, appeal from the ruling of the trial court which permanently enjoined defendants from enforcing against plaintiffs, Industrial National Mortgage Co. (Industrial), University Square, Ltd. (University), and

Chicago Title and Trust Co. (Chicago Title), a 1979 zoning ordinance which rezoned 25 acres of land located at 101st Street and Crawford Avenue (Pulaski Road) from "Residential Planned Development No. 91" to "R-2 Single Family Residence."

At trial, the parties stipulated to the following facts:

On November 20, 1972, the City adopted a zoning ordinance which zoned a tract of 25 acres at 101st Street and Crawford Avenue (Pulaski Road) as Residential Planned Development No. 91. This case involves only the north 12½ acres, which will be referred to as "the premises." The remaining portion of the tract will be referred to as "the south parcel." At the time the 25 acres was zoned as Residential Planned Development No. 91, all 25 acres were owned and controlled by the Sisters of Mercy of the Union in the United States and were under contract for purchase by Ornoff Associates, Inc.

After the 1972 zoning ordinance was passed, the premises were purchased by ITI-University Square, Ltd. The south parcel was purchased by ITI-Realty and Funding Corporation. These two corporations were related and were controlled by the same persons.

On April 13, 1973, plaintiff Industrial loaned to ITI-University Square, Ltd., $2,100,000 for the purchase and development of the premises and for the construction on the premises of Residential Planned Development No. 91.

On October 3, 1973, the premises were conveyed from ITI-University Square, Ltd., to Chicago Title, as trustee under trust No. 63107. The beneficiary of trust No. 63107 was ITI-University Square, Ltd. Subsequent to October 3, 1973, the south parcel was conveyed by ITI-Realty and Funding Corporation to Chicago Title, as trustee under trust No. 64775. The beneficiary of trust No. 64775 was ITI-Realty and Funding Corporation.

On December 30, 1974, the loan to ITI-University Square, Ltd., was refinanced for $1,729,000 by plaintiff Industrial. This $1,729,000 was to be used for the development and construction on the premises of Residential Planned Development No. 91.

In 1975, ITI-University Square, Ltd., defaulted on the loan from plaintiff Industrial. In September 1975, Industrial instituted a foreclosure proceeding on the premises. A decree of foreclosure was entered July 6, 1976, which stated that $1,416,326.57 was due plaintiff Industrial. This amount included the principal balance and accrued interest on the loan as of June 1, 1976, costs of the suit and attorneys' fees.

Industrial was the purchaser of the premises at the foreclosure sale. After the decree of foreclosure was entered, the premises were conveyed by plaintiff Industrial to Chicago Title, as trustee under trust No. 1068577. The beneficiary of trust No. 1068577 is Industrial.

During the pendency of the foreclosure action, on January 26, 1976, Chicago Title, as trustee of trusts Nos. 63107 and 64775, and in reliance upon Residential Planned Development No. 91 Ordinance, entered into an agreement with Cook County, Illinois. Under this agreement, the beneficiary of each trust was to pay $126,750 to Cook County for the construction of (1) an oversized combination sewer between 102d Street and 107th Street along Crawford Avenue (Pulaski Road), (2) storm sewer connections from the beneficiaries' property, and (3) an extra median to accommodate a future left-turn lane into the beneficiaries' property. These improvements were necessary to develop and construct Residential Planned Development No. 91 on the premises. The money was paid to Cook County by ITI-University Square, Ltd., and ITI-Realty and Funding Corporation, the beneficiaries of the trusts, and the construction was completed. The oversized sewer and the extra median were constructed because of the proposed construction of Residential Planned Development No. 91.

On September 26, 1977, Chicago Title, as trustee under trust No. 1068577, entered into an agreement with LaSalle National Bank, as trustee under trust No. 53025, for the sale of the premises. The beneficiary of LaSalle National Bank trust No. 53025 is plaintiff University.

On November 2, 1977, University submitted development plans (Part II Submittal) to the Chicago Department of Development and Planning (the Department) for the development of its portion of Residential Planned Development No. 91. On November 9, 1977, these plans were approved by the Department.

On February 8, 1978, University applied for building permits for the erection of three of 25 three-story apartment buildings on the premises pursuant to the plans approved on November 9, 1977. The requested permits were not issued.

On April 23, 1978, University filed a petition for writ of *mandamus* against the City and the Commissioner. The trial court issued the writ of *mandamus* directing the City and the Commissioner to issue the building permits. Neither the City nor the Commissioner appealed that decision and the City issued the building permits.

After the decision was entered in the mandamus action, then Alderman Jerimiah Joyce sought leave to intervene for the purpose of presenting to the court the propriety of University's plan in view of the fact that the 25-acre tract was no longer under unified ownership or control. On November 15, 1978, Joyce was granted leave to intervene, but the issue presented by Joyce was denied on the merits. Joyce appealed. On June 18, 1979, we held, in *University Square, Ltd. v. City of Chicago* (1979), 73 Ill. App. 3d 872, 392 N.E.2d 136, that because leave to intervene had been improperly granted to Joyce, he could not appeal the decision.

On September 12, 1978, during the pendency of Joyce's motion for leave to intervene, an ordinance to rezone the premises was introduced in the Chicago City Council. Hearings on the rezoning ordinance were scheduled for October 19, 1978, December 19, 1978, January 17, 1979, February 22, 1979, and May 15, 1979. At each hearing the matter was deferred through no action of plaintiffs.

On July 13, 1979, the Chicago Department of City Planning and Community Development issued a recommendation that the premises be rezoned. On August 6, 1979, the ordinance came up for a hearing in the Chicago City Council. The only testimony introduced in favor of the ordinance at the City Council hearing was the testimony of then Alderman Michael Sheahan. At a City Council hearing on the ordinance on August 16, 1979, attorneys for plaintiffs called various witnesses, including qualified experts, and introduced various testimony to show that the proposed ordinance would not result in the best and highest use of the land. On September 12, 1979, the Chicago City Council enacted an ordinance which rezoned the premises to the R-2 classification (single-family residence).

On February 26, 1979, an action for declaratory judgment and injunctive relief was filed by Brothers James McDonald and Eugene Pilon against University and the City. Industrial was granted leave to intervene as a defendant in that action. On May 17, 1979, the trial court entered an order preliminarily enjoining defendant University from proceeding with any construction with respect to the premises pursuant to the building permits issued by the Commissioner. On January 4, 1980, the trial court held that University's Part II Submittal did not conform to the Residential Planned Development No. 91 Ordinance because the plans contained a major change in the character of the planned development. The court also held that the terms and conditions of its order were not bound by the doctrines of *res judicata* and collateral estoppel. The trial court ruled that any permits issued to University by the City authorizing construction under the Part II Submittal were null and void. The trial court permanently enjoined University and Industrial from commencing or proceeding pursuant to the Part II Submittal of November 2, 1977, which had been approved by the City on November 9, 1977, pending approval of the City Council. University filed an appeal from that decision which was subsequently withdrawn.

On November 27, 1979, in the instant case, plaintiffs filed an amended complaint for declaratory judgment and injunctive relief, alleging that in reliance on the 1972 ordinance they had substantially changed their position and made substantial expenditures. Plaintiffs alleged that the 1979 zoning ordinance rezoning the premises to a "R-2 Single Family Residence" classification would prohibit the use of their

property for multiple-family housing as allowed by the 1972 ordinance and is unconstitutional, illegal and invalid because (1) it was not passed for the purpose of the public health, safety and morals as required by the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 11—13—1 *et seq.*), (2) the 1979 ordinance did not allow for the highest and best use of the property, and (3) it deprived plaintiffs of a right to their property without due process of law.

Based on the parties' stipulated facts and their trial briefs, on August 14, 1980, the trial court ruled that plaintiffs expended substantial sums of money in reliance on the 1972 zoning ordinance; that they materially changed thir position in reliance on the probability that permits would issue for construction permitted by the 1972 Residential Planned Development No. 91 Ordinance; that the City acted in bad faith in its downzoning of the subject property and that such a change in zoning was not related to the public safety, health or welfare; and that plaintiffs acquired vested property rights in the 1972 zoning ordinance "Residential Planned Development No. 91."

The trial court permanently enjoined defendants from enforcing the 1979 zoning ordinance against plaintiffs. Defendants appeal.

Defendants contend that the trial court erred in its conclusions (1) that the City acted in bad faith when it passed the 1979 zoning ordinance; (2) that plaintiffs substantially changed their position in reliance on the 1972 ordinance; and (3) that the principle of *res judicata* did not bar a determination that plaintiffs have a vested property right in the 1972 ordinance.

We find it unnecessary to address the City's first contention. Even if the City did not act in bad faith in enacting the 1979 zoning ordinance, that ordinance cannot be enforced against plaintiffs because plaintiffs substantially changed their position in reliance on the 1972 zoning ordinance.

The standard for review of zoning cases is that the findings of the trial court will not be disturbed unless against the manifest weight of the evidence. (*LaGrange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 388 N.E.2d 388; *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 377 N.E.2d 21; *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65; *Standard State Bank v. Village of Oak Lawn* (1963), 29 Ill. 2d 465, 194 N.E.2d 201.) With regard to the question of substantial reliance on a building permit, our supreme court in *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 522-23, quoted *People ex rel. Skokie Town House Builders, Inc. v. Village of Morton Grove* (1959), 16 Ill. 2d 183, 191, 157 N.E.2d 33, and stated:

"'* * * [W]here there has been a substantial change of position, expenditures or incurrence of obligations made in good faith by an

innocent party under a building permit or in reliance upon the probability of its issuance, such party has a vested property right and he may complete the construction and use the premises for the purposes originally authorized, irrespective of subsequent zoning or a change in zoning classification.' "

It is clear that plaintiffs here made a substantial financial commitment to acquire and develop the premises. The stipulated facts state that (1) Industrial loaned ITI-University Square, Ltd., $2,100,000 for the purchase and development of the premises and for the construction on the premises of Residential Planned Development No. 91; (2) Industrial refinanced the loan to ITI-University Square, Ltd., for $1,729,000 for the development and construction on the premises of Residential Planned Development No. 91; and (3) in reliance on Residential Planned Development No. 91 Ordinance, Chicago Title, as trustee for trusts Nos. 63107 and 64775, entered into an agreement with Cook County, Illinois, whereby the beneficiaries of the trusts were to pay a certain amount of money to Cook County to pay for the cost of an oversized sewer and extra median which were necessary to develop and construct Residential Planned Development No. 91 on the premises. The sewer and median were constructed and paid for.

As to University, an exhibit to plaintiffs' trial brief indicates that University expended over $300,000 in reliance on Residential Planned Development No. 91 Ordinance. These expenses covered expenditures for land acquisition, surveys, appraisals, architectural and engineering plans and specifications and accountant and attorneys' fees.

There is no question but that plaintiffs expended monies in reliance on the 1972 zoning ordinance and the probability of the issuance of building permits. Plaintiffs made these expenditures prior to notice of a proposed change in the premises' zoning classification and before the amendatory ordinance was introduced in the City Council.

Consequently, we find that the trial court's determination that plaintiff substantially relied in good faith on the 1972 zoning ordinance and the probability of the issuance of building permits and thereby acquired a vested property right to use the premises as provided in the 1972 ordinance, irrespective of the 1979 zoning ordinance, was not against the manifest weight of the evidence.

Defendants' final contention is that the trial court erred in its conclusion that the doctrine of *res judicata* did not bar a determination that plaintiffs have a vested property right to use the premises as provided in the 1972 zoning ordinance. The City argues that the issue of whether plaintiffs here acquired such a vested property right was determined in McDonald et al. v. City of Chicago et al. (case No. 79 L 4006), in which the court ruled that the Part II Submittal which the 1972 ordinance

required be submitted to the Department of Development and Planning was not authorized or in compliance with the 1972 ordinance. We reject this argument.

In *Consolidated Distilled Products, Inc. v. Allphin* (1978), 73 Ill. 2d 19, 26, 382 N.E.2d 217, our supreme court, in defining the principle of *res judicata*, quoted *Charles E. Harding Co. v. Harding* (1933), 352 Ill. 417, 426, 186 N.E. 152, stating:

> " '* * * Where the former adjudication is relied on as an absolute bar to a subsequent action, it must be shown that the cause of action, the thing to be recovered and the parties are the same in both proceedings. * * *' "

In the McDonald case, plaintiffs sought to enjoin defendant University from proceeding with any construction with respect to the premises pursuant to the building permits issued by the Commissioner because University's Part II Submittal did not conform to the Residential Planned Development No. 91 Ordinance. Here, plaintiffs seek to enjoin defendants from enforcing against them a 1979 zoning ordinance which rezones the premises from Residential Planned Development No. 91 to an R-2 zoning classification. The McDonald case is not a bar to the instant case because we find the cases do not involve the same cause of action.

The principle of estoppel by verdict may apply to cases where, although the cause of action is not the same, some fact or question has been adjudicated and determined in a former suit and the same fact or question is again put in issue in a subsequent suit between the same parties. (*Consolidated*, quoting *Harding*.) Under the principle of estoppel by verdict the determination in the former suit of the fact or question will be conclusive on the parties in the later suit, regardless of the lack of identity of the causes of action in the two suits. (*Consolidated*, quoting *Harding*.) " '* * * When the second action between the same parties is upon a different cause of action, claim or demand, it is well settled that the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined and not as to other matters which might have been litigated and determined.' " *Consolidated*, 73 Ill. 2d 19, 26, quoting *Harding*, 352 Ill. 417, 427.

Defendants contend that the issue of whether plaintiffs in the instant case acquired a vested property right in the 1972 zoning ordinance was essentially dealt with in McDonald, when the court there ruled that the developers' Part II Submittal Plan which the 1972 ordinance required to be submitted to the City's Department of Development and Planning was not authorized or in compliance with the 1972 ordinance. However, we find that whether or not University acquired a vested property interest to use the premises as provided was never decided in McDonald. Therefore, the principle of estoppel by verdict is inapplicable in this case, and

McDonald does not bar a determination that plaintiffs acquired a vested property interest to use the premises as provided in the 1972 ordinance. Rather, we are of the opinion that the building permits under the Part II Submittal which were issued after the trial court in the unappealed *mandamus* suit ordered their issuance are conclusive on defendants.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and CAMPBELL, J., concur.