O'CONNELL HOME BUILDERS, INC., *et al.*, Plaintiffs-Appellees, *v.*
THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 79-2072

Opinion filed September 2, 1981.

William R. Quinlan, of Chicago (Robert R. Retke and Edmund Hatfield, of counsel), for appellants.

Baker & McKenzie, of Chicago (Francis D. Morrissey, John T. Coleman, and Edward J. Zulkey, of counsel), for appellees.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

O'Connell Home Builders, Inc., and Glynn, McGregor, Murphy and Associates, the plaintiffs, filed a complaint for a writ of *mandamus* seeking to compel the commissioner of the department of buildings and the city of Chicago, the defendants, to issue a building permit. The writ was granted, and the defendants appeal.

On appeal the defendants contend that the plaintiffs were not entitled to a writ of *mandamus* because: (1) the permit application contained a material misrepresentation, (2) the plaintiffs did not make a formal demand for the permit before filing suit, (3) the plaintiffs were guilty of laches, and (4) the property in question was rezoned to prohibit the type of structure proposed by the plaintiffs after submission of their permit application.

James O'Connell, president of O'Connell Home Builders, Inc., and a building contractor, entered into a contract with Glynn, McGregor, Murphy and Associates to purchase a vacant lot at the address commonly known as 4550 West 56th Street, Chicago, Illinois, at a price of $155,000. The complaint alleged that this contract was contingent upon O'Connell's ability to obtain a permit to build a 51-unit apartment building on the property. At that time the property was zoned R-4, which allowed the construction of a multiple dwelling structure.

O'Connell testified that he visited Alderman John Madrzyk to express his intention to construct an apartment building on the vacant property at 4550 West 56th Street and to present his preliminary drawings. Alderman Madrzyk said the plans looked good and told O'Connell to see him before making application for a permit so that he could sign a waiver.

O'Connell hired an architect to prepare drawings and plans to be submitted with the application for a building permit. The architect's fee was $12,000. The application was filed in May of 1978; and when O'Connell did not receive a permit by the end of that month, he unsuccessfully sought to have a meeting with Building Commissioner Fitzgerald. O'Connell was told by Deputy Commissioner Kill that he had received a letter from Commissioner Fitzgerald stating that the building permit was not to be issued. O'Connell's further attempts to see Commissioner Fitzgerald failed. At no time did O'Connell receive any communication from the department of buildings with respect to his application and why it was not processed. O'Connell returned to see Alderman Madrzyk, who told O'Connell that he did not want the building constructed. O'Connell went to see State Representative and Ward Committeeman Michael Madigan, who also indicated that he did not favor the construction. O'Connell further testified that he paid $5,500 for the removal of all the trees on the subject property.

On cross-examination, O'Connell admitted that the preliminary drawing of the proposed building which was submitted to the department of buildings prior to formal application showed that the alleys north and east of the subject property were paved when they were unpaved. The blueprints submitted with the application also showed the alleys were paved. O'Connell stated that the documents portrayed the area as it would be after the building was constructed and that he intended to pave the alleys. O'Connell also admitted that he never made a demand, written or oral, upon Commissioner Fitzgerald to issue the permit. He did make a request to Deputy Commissioner Kill to process the application.

Arthur Gouvis, the architect hired by O'Connell, testified that he filed the application for a building permit and site plans in May of 1978. The department of buildings made no request upon Gouvis to amend the submitted plans. In his opinion, the documents complied with the zoning requirements and the building code of the city of Chicago. On cross-examination, Gouvis admitted that he did not make a demand upon Commissioner Fitzgerald to issue a permit. He stated that the site plans indicated that the alleys were paved.

Robert F. Kill, deputy commissioner of the department of buildings for the city of Chicago, testified that the permit was not issued to O'Connell because Commissioner Fitzgerald had requested a study of the surrounding boundaries of the subject property and because the appli-

cation did not truly reflect the streets and alleys around the property. Kill also stated that there was a proposed ordinance pending before the city council that would rezone the property.

Alderman John S. Madrzyk testified that he was familiar with the subject property. He stated that he met O'Connell to discuss the proposed building and expressed his belief that there would be a problem with the community since problems had occurred when another building had been constructed in that area. Madrzyk testified that he anticipated problems with the sewer system, street lighting, access by fire vehicles and parking shortages. Madrzyk denied that he approved or disapproved the plans submitted by O'Connell. He also testified that in September of 1978 he introduced into the city council an ordinance amendment that would change the zoning classification of the subject property. The ordinance was passed by the city council on August 10, 1979. (Journal of the Proceedings of the City Council of Chicago, August 10, 1979, at 626.) The trial of this case was held on August 17, 1979.

Michael Madigan, State Representative for the district where the subject property is located, testified that he had three objections to the proposed building—the incompatibility of a large apartment complex with the general character of the neighborhood, parking shortages, and an expectation that the adjacent alleys would be used as streets. On cross-examination, Representative Madigan stated that he did not voice his objections to anyone in the department of buildings.

Five residents of the area were permitted to testify concerning their objections to the proposed building. They expressed concern for parking shortages, the use of their alleys as streets, potential decreases in property values and unsafe conditions for the tenants of the proposed building.

At the conclusion of the trial, the court granted the complaint for a writ of *mandamus* and directed the defendants to issue a building permit to O'Connell Home Builders, Inc. The defendants' post-trial motion to vacate this judgment was denied.

Initially, the defendants contend that the writ of *mandamus* should not have been granted because the plaintiffs did not have a legal right to have the building permit issued to them since the permit application contained a misrepresentation of material fact. The defendants rely on the testimony of O'Connell and Gouvis that the application showed the alleys to the east and north of the subject property were paved while the alleys were in fact unpaved. The defendants cite two provisions of chapter 43 of the Municipal Code of Chicago which concern the examination and approval by various city department heads of drawings and plans submitted with permit applications (Municipal Code of Chicago, ch. 43, §43—4) and the annulment of a permit when departures from the drawings and plans occur after the permit has been issued (Municipal

Code of Chicago, ch. 43, §43—10). The defendants rely on these provisions and argue that the means of access to the subject property were contrary to the drawings and plans submitted and that the building commissioner's discovery of this departure justified a determination that the application was void.

■■ While neither provision cited by the defendants governs the authority of the building commissioner to deny a permit due to the existence of a material misrepresentation in the permit application, the commissioner's inherent power to so act is without question. We do question, however, the defendants' argument that a material misrepresentation existed when the plaintiffs' plans characterized the alleys as paved. A misrepresentation is material if it would be likely to affect the conduct of a reasonable man with reference to the transaction in question. (See, *e.g.*, *Costello v. Roer* (1946), 77 Cal. App. 2d 174, 175 P.2d 65.) The drawings and plans involved in the instant case clearly set forth the means of access to the subject property by way of alleys and streets. There was no evidence presented that the permit application would have been denied had the application indicated that the alleys were unpaved. The defendants have cited no ordinances that require or prohibit paved or unpaved alleys. Thus, we fail to see how the designation in the permit application that the alleys were paved was a factor material to the approval of the application. Furthermore, we note that O'Connell testified that he intended to pave the alleys in question and that the documents he submitted to the city for review were intended to represent the area after the proposed building was constructed. For these reasons, we reject the defendants' argument that the application contained a material misrepresentation. The permit should not have been denied on this basis.

■■ The defendants also contend that the plaintiffs were not entitled to a writ of *mandamus* because they did not make a formal demand on the commissioner of buildings before filing suit. In general, a demand for performance and a refusal to comply therewith are conditions precedent to the maintenance of a mandamus action to enforce a private right. (*Murphy v. City of Park Ridge* (1921), 298 Ill. 66, 131 N.E. 256; see *Moffitt v. City of Rock Island* (1979), 77 Ill. App. 3d 850, 397 N.E.2d 457.) The rationale for this rule was expressed in *People ex rel. O'Brien v. Cruger* (1896), 12 App.Div. 536, 42 N.Y.S. 398, and was adopted by our State courts in *People ex rel. Edelman v. Hunter* (1953), 350 Ill. App. 75, 111 N.E.2d 906. A demand is made upon the defendant " 'because it is due to the defendant to have the option of doing the act before an application shall be made to the court to compel him to do it.' " *People ex rel. Edelman*, at 79.

■■ The defendants rely on *Eley v. Cahill* (1970), 126 Ill. App. 2d 272, 261 N.E.2d 819, wherein one of the reasons that an amended complaint for

*mandamus* was dismissed was because the complaint failed to allege that a demand for relief was made upon the defendants and that performance was refused or that such a demand would have been unavailing. We believe the facts in *Eley* are distinguishable from the case at bar. In *Eley* the plaintiffs sought a court order to compel certain city officials to change the plaintiffs' civil service grade and rank. The defendants had not been given an opportunity to grant the plaintiffs' request prior to the filing of the complaint because the plaintiffs had not made a demand upon them. In the instant case, the defendants were given an opportunity to grant the plaintiffs' permit application before the plaintiffs filed their complaint for a writ of *mandamus* to compel the permit's issuance. When the permit was not issued, O'Connell met with Deputy Commissioner Kill and was told that Commissioner Fitzgerald had written a letter stating that the permit was not to be issued. Thus, we believe the demand requirement was satisfied in this case and that the plaintiffs' complaint alleged this essential element by stating that the application was filed and the permit was denied.

■■ The defendants' third argument on appeal is that the instant *mandamus* proceeding is barred because the plaintiffs were guilty of laches. While the doctrine of laches applies to *mandamus* proceedings (*People ex rel. Fleming v. Conlisk* (1973), 11 Ill. App. 3d 520, 299 N.E.2d 537), we will not discuss its relevance to the instant proceeding because the defendants have waived this issue. The defendants did not raise the defense of laches in their answer or by way of affirmative defense at trial. (See Ill. Rev. Stat. 1979, ch. 110, par. 43(4).) They have attempted to raise a new issue on appeal. This is improper. *In re Marriage of Potter* (1980), 88 Ill. App. 3d 606, 410 N.E.2d 999; *Steven v. Falese Land Co.* (1977), 50 Ill. App. 3d 231, 365 N.E.2d 967.

As their final argument, the defendants contend that the plaintiffs were not entitled to the building permit because construction of the proposed building was prohibited by the zoning ordinance amendment promulgated after the plaintiffs' application for the permit was submitted. The plaintiffs' application was filed in May 1978. The zoning amendment was introduced by Alderman Madrzyk in September 1978. This amendment was recommended by the city council committee on buildings and zoning on August 6, 1979, and the ordinance was passed by the city council on August 10, 1979, one week before the trial of the plaintiffs' action. Journal of the Proceedings of the City Council of Chicago, August 10, 1979, at 626.

The defendants argue that the plaintiffs' complaint for a writ of *mandamus* should have been denied in accordance with the holding in *Chicago Title & Trust Co. v. Village of Palatine* (1959), 22 Ill. App. 2d 264, 160 N.E.2d 697. In that case the court held that the plaintiffs did not

acquire a vested property right when they filed their permit application before the zoning amendment was enacted because the municipality had already begun procedures to amend the existing zoning ordinance. The facts in the instant case are distinguishable because O'Connell submitted his permit application four months before amendatory procedures had begun. No evidence was presented at trial that O'Connell knew or could have known that the building he sought to construct was going to be prohibited by a zoning ordinance amendment.

■■ The defendants are correct in arguing that there is no vested right in the continuance of a law or ordinance. (*Naumovich v. Howarth* (1968), 92 Ill. App. 2d 134, 234 N.E.2d 185.) However, Illinois law also recognizes that a vested right to the issuance of a permit can be acquired, irrespective of a subsequent change in zoning classification, where there is a substantial change in position by expenditures or incurrence of obligations in reliance upon the probability of the issuance of a building permit. *E.g., Cos Corp. v. City of Evanston* (1963), 27 Ill. 2d 570, 190 N.E.2d 364; *Fifteen Fifty North State Building Corp. v. City of Chicago* (1958), 15 Ill. 2d 408, 155 N.E.2d 97; *American National Bank & Trust Co. v. City of Chicago* (1974), 19 Ill. App. 3d 30, 311 N.E.2d 325.

The defendants contend that the plaintiffs did not undergo a substantial change in position in reliance upon the zoning ordinance in effect at the time that plaintiffs' application for a permit was filed. Specifically, they note that the contract to purchase the subject property was conditioned upon the receipt of a building permit. The defendants argue that the $12,000 fee for architectural services was exorbitant since O'Connell testified that similar plans had been prepared for another building constructed two years earlier. The defendants further contend that the $12,000 fee should not be allowed because of the clean hands doctrine since the permit application contained the factual misrepresentation relative to the condition of the alleys. Finally, the defendants argue that the $5,500 tree removal expense was not a substantial change in position.

■■ ■ We agree with the defendants that the $155,000 contract to purchase the subject property was not an expense to be considered in determining whether the plaintiffs underwent a substantial change in position. Since the contract to purchase was conditional, it cannot be used as proof of a large expenditure. (See *People ex rel. Shell Oil Co. v. Town of Cicero* (1973), 11 Ill. App. 3d 900, 298 N.E.2d 9; *Naumovich v. Howarth*.) However, we conclude that the plaintiffs incurred substantial expenditures based on the $12,000 architectural fee and $5,500 tree removal expense. The tree removal fee was an expenditure which constituted a substantial change in position distinguishable from a charge disallowed in *People ex rel. Shell Oil Co.*, a case cited by the defendants. In that case, the court disallowed a building demolition fee because it was

incurred after the plaintiffs knew that the issuance of a permit to them was doubtful. The record in the instant case does not reflect any knowledge or reasonable belief by the plaintiffs that the permit would not be issued at the time they incurred the tree removal expense.

■■ We also reject the defendants' argument relative to the $12,000 architectural fee. The defendants made no showing at trial as to why this charge was exorbitant and it is not for this court to speculate as to the appropriateness of such a fee. Furthermore, we do not believe that the classification of the alleys as paved in the application demonstrates unclean hands. As noted above, O'Connell intended that the preliminary drawing which was submitted to the department of buildings would show the alleys as paved because he wanted that document to portray the surrounding area after the construction was completed. We do not regard the alley characterizations as proof of bad faith on the part of the plaintiffs.

To conclude, we believe the expenses totalling $17,500 were incurred by the plaintiffs in reliance upon the probability that the building permit would be issued. These expenditures resulted in a substantial change in position by the plaintiffs (see *Naumovich v. Howarth* ($1005 is not substantial); *Sgro v. Howarth* (1964), 54 Ill. App. 2d 1, 203 N.E.2d 173 ($23,000 is substantial)), so that a right was created in the plaintiffs to use the subject property for the purposes authorized by the zoning ordinance that existed at the time the permit application was submitted to the department of buildings of the city of Chicago. Thus, the trial court properly granted the plaintiffs' complaint for a writ of *mandamus*.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI, P. J., and McNAMARA, J., concur.