FURNITURE L.L.C., an Illinois Limited ) Appeal from the

Liability Company, ) Circuit Court of

) Cook County.

Plaintiff-Appellee, )

)

v. ) No. 00 CH 9998

)

THE CITY OF CHICAGO, a Municipal )

Corporation, ) Honorable

) Robert V. Boharic,

Defendant-Appellant. ) Judge Presiding.

PRESIDING JUSTICE REID delivered the opinion of the court:

The trial court entered a judgment in favor of the plaintiff, Furniture L.L.C. (Furniture), finding that it had a vested right to build a residential structure on property which it owned that was later down-zoned.  The defendant, the City of Chicago (the City), appeals this ruling, arguing that Furniture did not have a vested right to build under the prior zoning ordinance.  For the reasons that follow, we affirm the trial court’s decision.

BACKGROUND

Furniture is a limited liability company that has three managers: William Smith, Gordon Segal and Stanley Nitzberg.  Smith is a real estate developer; Segal is the founder and chief executive officer of Crate & Barrel; and Nitzberg is a principal of Mid-America Realty and a commercial real estate developer.  Furniture was formed in 1996 to purchase and develop a parcel of land located at 840-860 West Blackhawk Street, in Chicago, Illinois.  The property at issue sits on a site that was formerly a Homemaker's Furniture showroom and is located inside an area of Chicago known as the Halsted Triangle.

On October 30, 1997, Furniture closed on the purchase of the Homemaker's site, for which it paid $12.5 million.  The property was zoned C3-5 at the time of the purchase.  This zoning classification required that the ground level be used for retail or commercial purposes and allowed the other floors to be developed for residential use up to 325 units.  At trial, Furniture's managers testified that they intended to develop the Homemaker’s site for residential use and that Furniture would not have purchased the property for $12.5 million if that was not possible.

After purchasing the property, Furniture hired the architectural firm of Papageorge & Haymes, Ltd., to perform some preliminary work to determine "what sort of footprint on the land would be required for [a] residential building."  In February 1998, Furniture decided to sell the front portion of the Homemaker's site with the existing building on it for $12 million, while retaining the rear portion of the site for residential development.  The rear portion of the site is the property that is at issue in this litigation.  

Furniture initially negotiated to sell the front portion to Costco Wholesale Club (Costco) for $12.5 million.  However, one of Crate & Barrel’s major stores is located in the very near vicinity of the front parcel.  Segal believed that a Costco would bring congestion and the wrong type of customer to the area.  Consequently, Segal decided to purchase a slightly smaller portion of the front for $12 million.  The design plans from Papageorge and Haymes were abandoned in early 1998, after the front portion of the property was sold to Segal.

In December 1997, Furniture retained the architectural firm of Booth Hansen.  The Booth Hansen architectural firm undertook the preparation and drafting of detailed architectural plans for a residential high-rise building above a commercial retail base on the back portion.  Initially, Furniture intended to build a multiplex movie theater and a parking lot at the base of the high-rise residential structure.  In 1998, Booth Hansen drafted architectural plans depicting a residential high rise with movie theaters at its base.  Furniture, however, was unable to subsequently secure financing for the theater portion of the project.  Thereafter, in December 1998, Furniture retained the architectural firm of Lucien Lagrange to prepare a new design.  Lucien Lagrange created new plans for a single residential tower with a retail base.

On March 10, 1999, Alderman Theodore Matlak proposed an ordinance to the Chicago city council to create a planned manufacturing district (PMD) that would cover the Halsted Triangle.  Matlak testified that PMDs are created to protect the existing manufacturers and businesses which are located in the relevant area from residential encroachment that is not compatible to the existing businesses.  Matlak testified that when he submitted the proposed ordinance, he was unaware of any plan by Furniture to develop a residential structure on the Homemaker’s site.  On March 19, 1999, Matlak sent a letter to the zoning administrator, Paul Woznicki, informing him of the proposed zoning change and requesting that the City hold all building permits in the Halsted Triangle while the proposed ordinance was pending.

On or about June 11, 1999, Furniture’s managers learned that Alderman Matlak had proposed an ordinance that would rezone the Halsted Triangle as a PMD.  Robert Bruno, a member of Furniture, and Smith testified that on that day they received a facsimile from Segal’s attorney, Harvey Silverstone, that contained a copy of the proposed ordinance.  

In the summer of 1999, Furniture retained structural engineers and real estate consultants.  Its architectural firm continued to prepare the plans necessary for submission as part of Furniture’s application for a caisson permit.  Furniture applied for and obtained a house numbers certificate, in September 1999.  Furniture also submitted its application for a caisson permit in September 1999.  In October 1999, Furniture received a driveway permit for its proposed development.  The City informed Furniture in December 1999 that it would not receive zoning clearance on its permit application because a hold had been placed on applications in the Halsted Triangle during the pendency of Alderman Matlak’s proposed ordinance. 

Matlak testified that on February 9, 2000, the Department of Planning and Development held a public meeting regarding the proposed PMD for the Halsted Triangle.  Some of those who attended the meeting approved of the idea of keeping residential use out, but they voiced opposition to rezoning the area as a PMD.  Accordingly, Matlak stated that he introduced a new C5 zoning classification.  This classification is less restrictive than a PMD but serves the same function of protecting the existing commercial, retail and manufacturing uses to the exclusion of residential uses in the area.  The C5 classification was enacted on August 13, 2000, and on February 7, 2001, the Halsted Triangle was rezoned as a C5 district.

In July 2000, Furniture filed a verified complaint for declaratory judgment and injunctive relief.  The complaint requested that the trial court find that Furniture had acquired a vested right to complete its residential project in accordance with the prior C3-5 zoning and enjoin the City from applying the new C5 zoning.

On November 19, 2002, the trial court entered a declaratory judgment in favor of Furniture.  The trial court held that Furniture had a vested right to develop the Homemaker’s site in accordance with the C3-5 zoning, and enjoined the City from withholding the issuance of any permits to Furniture in connection with its development of the Homemaker’s site under the C3-5 zoning district on the basis that Furniture’s permit applications do not comply with the new C5-4 zoning district.

Specifically, the trial court found that Furniture had not received notice of the proposal for a new zoning ordinance until June 1999.  The trial court also made a credibility determination that the managers of Furniture bought the Homemaker’s site with the intention to build a residential structure and never wavered from that intention.

ANALYSIS

The standard for review for zoning cases is that the findings of the trial court will not be disturbed unless against the manifest weight of the evidence.  
Pioneer Trust 
& 
Savings Bank v. County of Cook
, 71 Ill. 2d 
510, 516-17 (1978).  
A judgment is against the manifest weight of the evidence only when an opposite conclusion is clearly evident or the factual findings on which it is based are unreasonable, arbitrary or not based on the evidence.  
1350 Lake Shore Associates v. Mazur-Berg
, 
339 Ill. App. 3d 618, 628-29 (2003
)
.

Generally, there is no vested right in the continuation of a zoning classification.   
Wakeland v. City of Urbana
, 
333 Ill. App. 3d 1131, 1142 (2002), citing 
County of Kendall v. Aurora National Bank Trust No. 1107
, 219 Ill. App. 3d 841, 848 (1991).  However, the Illinois Supreme Court has held:

     “‘[W]here there has been a substantial change of position, expenditures or incurrence of obligations made in good faith by an innocent party under a building permit or in reliance upon the probability of its issuance, such party has a vested property right and he may complete the construction and use the premises for the purposes originally authorized, irrespective of subsequent zoning or a change in zoning classifications.’”  
Pioneer Trust
, 71 Ill. 2d at 522-23
, 
quoting 
People ex rel. Skokie Town House Builders, Inc. v. Village Morton Grove
, 16 Ill. 2d 183, 191 (1959).

See 
Industrial National Mortgage Co. v. City of Chicago
,
 
95 Ill. App. 3d 666, 670-71 (1981).

There is no bright-line test for determining whether a party's expenditures have been made in good-faith reliance on the probability that a zoning certificate or a building permit will issue.  It has been stated that " ‘[a] probability that approval is forthcoming exists when the property at issue is zoned to permit the use requested by the landowner.’ "  
1350 Lake Shore Associates v. Mazur-Berg
, 339 Ill. App. 3d 618, 632 (2003), quoting 
Bank of Waukegan v. Village of Vernon Hills
,
 254 Ill. App. 3d 24, 31 (1993); see also 
People ex rel. Shell Oil Co. v. Town of Cicero
,
 11 Ill. App. 3d 900, 904 (1973).  “[E]xpenses incurred at a time when the current zoning permits the intended use and when the property owner has no knowledge that an amendment to the ordinance is being considered are incurred in good-faith reliance on the issuance of a zoning certificate and a building permit and, if substantial, create a vested right.”  
1350 Lake Shore Associates
, 339 Ill. App. 3d at 632; see 
Illinois Mason Contractors, Inc. v. City of Wheaton
,
 19 Ill. 2d 462 (1960); 
O'Connell Home Builders, Inc. v. City of Chicago
,
 99 Ill. App. 3d 1054 (1981); 
Mattson v. City of Chicago
,
 89 Ill. App. 3d 378 (1980).  “It has been held, however, that expenses which a property owner incurs with knowledge that an amendatory ordinance, pursuant to which the intended use would not be permitted, is pending, are not incurred in good-faith reliance on the probability that a zoning certificate or a building permit will issue.”  
1350 Lake Shore Associates
, 339 Ill. App. 3d at 632-33; see 
VonBokel v. City of Breese
,
 100 Ill. App. 3d 956 (1981). 

“Generally, one cannot reasonably rely on the indefinite continuation of a zoning classification.  Like any legislation, zoning ordinances can be amended, and one buys land with that understanding. 

‘Although property owners have a right to rely upon the classification of their property and know that the classification will not be changed unless required for the public good, they also acquired their property knowing that amendments could be made to the ordinance within the limits of the law.’ 
Thompson v. Cook County Zoning Board of Appeals
,
 96 Ill. App. 3d 561, 577, 421 N.E.2d 285, 298 (1981).

To come within the rule of 
Pioneer Trust
,
 
Industrial National Mortgage
,
 and similar cases, the buyer must take action to develop the property within a reasonable time or else a city's right to amend its zoning ordinance in response to changing conditions would be greatly impaired.”  
Wakeland
, 333 Ill. App. 3d at 1143.

Initially, the City argues that the trial court erred as a matter of law when it determined that Furniture had acquired a vested right in the former C3-5 zoning classification simply by spending enough money before the prior zoning ordinance was amended.  The City contends that Furniture has not acquired a vested right because “a property owner must show a reasonable good faith reliance on an affirmative act by a municipality before the municipality will be estopped from applying the current zoning ordinance.” 

Relying on 
Tim Thompson, Inc. v. Village of Hinsdale
, 247 Ill. App. 3d 863, 878-79 (1993), and a variety of other cases, the City contends that it has not been equitably estopped from changing the existing zoning ordinance for the Halsted Triangle.  

In 
Tim Thompson, Inc.
, the court stated:

“Equitable estoppel is a doctrine developed in equity to prevent a party from asserting rights where the assertion of those rights would work a fraud or injustice.  [Citation.]  In Illinois, the doctrine of equitable estoppel is applicable to municipal corporations.  [Citations.]  Where the doctrine is to be invoked against a governmental body acting in the exercise of its governmental functions, particularly those relating to public revenues, estoppel should lie in only extraordinary [citation] or compelling circumstances [citation].
 Generally, the party seeking to claim the benefit of the principle must have relied upon the actions or representations of the other and must have had no knowledge or convenient means of knowing the true facts.  [Citation.]  A party seeking to invoke the doctrine of equitable estoppel against a municipality must establish (1) an affirmative act on the part of the municipality; (2) that the affirmative act induced the complained-of action; and (3) that it substantially changed its position as a result of its justifiable reliance
.
  [Citation.]  The affirmative acts which induce reliance must be the acts of the municipality, such as legislation, and not merely the unauthorized acts of a ministerial officer.  
[Citation.]”  (Emphasis omitted.)  
Tim Thompson
, 247 Ill. App. 3d at 878-79.

The City maintains that the trial court erred when it determined that all Furniture was required to show in order to obtain a vested right in the prior zoning ordinance for its site was that it had spent a substantial amount of money before the ordinance that ultimately down-zoned its property was brought to its attention.  Instead, the City avers that Furniture could only acquire a vested right if the City gave Furniture an affirmative assurance that it could build under the old zoning ordinance.  The City relies on a great many cases, including
 
Tim Thompson
. 
Tim Thompson
 is particularly enlightening.  In 
Tim Thompson
, a developer brought an action against a municipality seeking to enjoin enforcement of a local zoning ordinance.  There, the municipality approved the plat of a subdivision.  At the time of the approval, the subdivision conformed to the requirements of the then-existing zoning ordinance.

Shortly thereafter, the plaintiff purchased three lots in the subdivision.  Under the terms of the sales contract, the plaintiff agreed to guarantee an irrevocable letter of credit, payable to the municipality, whereby the plaintiff guaranteed the installation of certain public improvements in the subdivision.  

Thereafter, the municipality changed the existing zoning ordinance.  Following the zoning change, the plaintiff expended approximately $72,000 to complete the subdivision improvement work required by the municipality.  The municipality then informed the plaintiff that one of the lots could not be developed and that another lot would require a variation prior to development because of the new zoning ordinance.  

The plaintiff was then denied a building permit to build on one of the lots, and the municipality continued to insist that the plaintiff complete the required subdivision improvements under the irrevocable letter of credit.  The plaintiff applied for a map amendment to rezone its three lots.  The municipality denied the plaintiff’s application.

On appeal, the plaintiff argued that it had a vested right in the continuation of the prior zoning ordinance and that the municipality was equitably estopped from changing the prior zoning ordinance.

The 
Tim Thompson
 court dealt with each issue separately.  The court did not blur the distinction between the plaintiff’s vested rights and its equitable estoppel argument, as the City would have us do here.  

Applying the principles stated in 
Pioneer Trust
, the court found that the plaintiff did not have a vested right in the continuation of the prior zoning ordinance because it was on notice prior to making its expenditures that the prior zoning ordinance could be changed.  As such, the court determined that the plaintiff did not substantially change its position in reliance on the prior zoning classification or the probability of the issuance of building permits without constructive notice of the proposed zoning change.  
Tim Thompson
, 247 Ill. App. 3d at 876.

The court then went on to determine that the municipality was not equitably estopped from changing the existing zoning ordinance because the plaintiff was on notice of a possible change to the then-existing zoning ordinance.  The court stated that, “It is our opinion that where a party seeks to invoke the doctrine of equitable estoppel, the party cannot be said to have justifiably relied on the conduct of a public entity where that party has made expenditures with knowledge of zoning problems that may later affect its use of the subject property
.
”  
Tim Thompson
, 247 Ill. App. 3d at 879.

Here, the City erroneously attempts to merge the doctrines of equitable estoppel and vested rights.  The case law clearly makes a distinction between these two doctrines.  Nowhere in the requirements to show a vested right does the property owner need to show that it received some kind of an assurance from the municipality that it would be issued a building permit.  

Furniture does not have to show that it received previous assurances from the City in order to show that it has acquired a vested right in the continuation of the prior zoning ordinance.  Instead, in order to establish that it had a vested right, Furniture only needs to show that it made substantial expenditures in good-faith reliance on the probability that a building permit would be issued, as required by 
Pioneer Trust
.  

The evidence demonstrates that Furniture has shown a justifiable reliance.  The zoning at the time that Furniture purchased the property allowed for the development of a residential structure on the Homemaker’s site.  At trial, the managers of Furniture stated that they only acquired the Homemaker’s site because they intended to build a residential structure there.  

After hearing the evidence, the trial court made a credibility determination concerning the testimony of Furniture’s managers, Smith and Segal, and found that they purchased the Homemaker’s site with the intention of building a residential development and never wavered from that intention.  “It must be remembered that it was the trial court who saw the witnesses and heard them testify.  ‘It is axiomatic that a reviewing court may not reweigh the evidence or substitute its judgment for that of the trier of fact.  Findings of fact are entitled to deference, and this is particularly true of credibility determinations.’ [Citations.]”  
Eychaner v. Gross
, 202 Ill. 2d 228, 270 (2002).

The evidence further shows that Furniture immediately began to work on its project of building a 28-story residential building by hiring soil engineers, architects and marketing consultants.  After purchasing the Homemaker’s site, Furniture immediately began to act on its objective of building a residential structure and consequently comes within the rule of 
Pioneer Trust
.  See 
Wakeland
, 333 Ill. App. 3d at 1143.

The City goes on to argue that Furniture did not make substantial expenditures in reasonable reliance on the probability that a permit would issue.  The City maintains that even if Furniture had shown justifiable reliance, this is not enough for it to acquire a vested right.  The City claims that the trial court erroneously considered money that Furniture spent even after it was put on notice that the zoning for the Halsted Triangle could potentially be changed.  The City points out that the trial court determined that Furniture was put on notice of the potential zoning change in June 1999.  The City contends that the trial court nevertheless improperly considered monies that Furniture spent after June 1999.  

Furthermore, the City urges that the cost of the property should not be taken into consideration when determining whether  Furniture made substantial expenditures.  The City argues that this money should not be taken into consideration because Furniture can recover this cost by simply selling the property or developing it for another use.

Additionally, the City claims that the monies that Furniture spent on architectural designs which it abandoned should also be excluded.  The City contends that the reason that Furniture abandoned these plans had nothing to do with the City rezoning the Halsted Triangle.  The City maintains that these expenditures by Furniture do not represent a substantial change in reliance on the issuance of a building permit because Furniture itself never determined that these were projects for which it would even pursue a permit.

Here, we find that Furniture made substantial expenditures through June 1999, when it was finally put on notice of the proposed zoning changes.  It is undisputed that Furniture was not put on notice of the possibility that the zoning for the Halsted Triangle could change until June 1999.  At this time, Furniture had expended approximately $900,000 towards the development of the Homemaker’s site.  We find that the monies, $362,905.13, which Furniture expended after June 1999 was erroneously considered by the trial court.  

Specifically, the evidence shows that Furniture expended $901,530.65 through June 1999.  The trial court excluded expenditures that Furniture made to 
Papageorge and Haymes 
architectural firm for $7,454.23, leaving a total of $894,076.42 through June 1999.  This total includes the $500,000 that Furniture spent on acquiring the land.  This cost was properly considered when the court evaluated the expenditures that Furniture made.  See 
American National Bank & Trust Co. Of Chicago v. City of Chicago
, 19 Ill. App. 3d 30, 34 (1974) (which states that “the rule in Illinois [is] that substantiality is determined without regard to any proportional test and by considering the cost of the land”).

The costs of the architectural plans that Furniture later abandoned were also properly considered by the trial court.  Furniture never wavered in its intention to build a residential structure on the Homemaker’s site.  The Booth Hansen plans called for a movie theater to be located at the base of the residential structure.  Furniture was unable to gain financing for the theaters and needed to change its direction.  At this time, Booth Hansen began working on another major project, so Furniture changed architects.  As such, the Booth Hansen plans were just part of the development cost of the entire project. 

Furniture’s expenditures meet the test of substantiality.  An examination of the amount that courts have deemed to be substantial for purposes of vested rights support this finding.  See 
Mattson v. City of Chicago
, 89 Ill. App. 3d 378, 382-83 (1980)(sufficient that property owner demolished $40,000 building and spent approximately $4,100 for architectural and demolition services); 
Renieris v. Village of Skokie
, 85 Ill. App. 2d 418, 426 (1967)(sufficient that property owner paid a total of $96,000 in expenditures); 
Constantine v. Village of Glen Ellyn
, 217 Ill. App. 3d 4, 25 (1991)(sufficient that property owner paid $70,000 to purchase property and $1,400 for architect); 
Pioneer Trust
, 71 Ill. 2d at 523(sufficient that property owner paid approximately $125,000 in various costs, including architect, engineers and soil and water tests).

As such, we find that Furniture acquired a vested right to build a residential structure on the Homemaker’s site because it made substantial expenditures in good faith reliance that a building permit would issue.

CONCLUSION

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

Campbell, J., concurs

Justice O’Brien, dissenting:

I respectfully dissent from the majority and would reverse the trial court. 

The majority asserts that Furniture LLC acquired a vested right on the Homemaker’s site because it made substantial expenditures in a good faith reliance that a building permit would issue.  

However, the record reflects that the City made no explicit or implicit assertions to Furniture LLC and that Furniture LLC did nothing, except expend assets, to protect the zoning of the real estate in question.

Based upon those facts, there is no good faith reliance that a building permit would issue;   I respectfully dissent from the majority and would reverse the trial court.